Fogleman *v.* Shively *et al.*

Filed March 18, 1892.

---

No. 17.

## FOGLEMAN *v.* SHIVELY ET AL.

HUSBAND AND WIFE.—*Tenancy by Entireties.*—*Sale of Real Estate.*—*Proceeds of Sale.*—*Husband's Indebtedness.*—*Garnishment.*—Where real estate owned by husband and wife (who were non-residents) as tenants by the entireties was sold by them, and the proceeds of such sale remained in the agent's hands, who had negotiated the sale, no division of the proceeds having taken place, the interest of the husband therein could be subjected to the payment of his separate indebtedness, under proceedings in attachment and garnishment.

From the Bartholomew Circuit Court.

*S. Stansifer* and *C. S. Baker,* for appellant.

*M. Hacker, W. T. Strickland* and *C. F. Remy,* for appellees.

BLACK, J.—The appellant, on the 3d of May, 1887, filed his complaint and affidavit in attachment against the appellee Lewis Shively, a non-resident, the amount of the appellant's claim stated in the affidavit being $775. At the same time he instituted proceedings in garnishment against the appellee Walter J. Quick, charging him in the affidavit with having the control or agency of certain money, prop-

erty, effects or credits of said Lewis Shively, which the sheriff could not attach by virtue of the order of attachment.

The appellee Lewis Shively was defaulted.

The only question presented and argued in this court relates to the action of the court in overruling the appellant's demurrer to the fifth paragraph of the answer of the garnishee.

In that paragraph it was alleged that at the time of the service of the writ of garnishment on said Quick, he had in his possession one promissory note, dated May 1st, 1887, due one year after date, for the sum of eight hundred dollars, drawn payable to the garnishee at the First National Bank of Columbus, Indiana, and executed by C. F. Remy and C. J. Remy, and endorsed by the garnishee to the appellee Lewis Shively, and one bill of exchange, dated May 3d, 1887, drawn by said bank on the Third National Bank of New York in the sum of $946.40, payable to the appellee Lewis Shively; that the money evidenced by said note and bill was the proceeds of certain real estate situated in this State, which was held by said Lewis Shively and his wife, Amy Shively, as tenants by entireties, said real estate having been conveyed to them as husband and wife; that said garnishee had been employed by said Lewis Shively and Amy Shively as their agent to sell said real estate for them; that, in pursuance of his employment as such agent, he sold said real estate and received the sum of $946.43 in cash, with which he purchased said bill of exchange at the First National Bank of Columbus, Indiana, for the purpose of transferring said money to said Lewis and Amy Shively at Los Angeles, California, where said Lewis and Amy Shively resided, and said garnishee having been notified by said Lewis and Amy Shively that said Amy Shively was absent from California, and that the money could not be procured on said bill without her endorsement thereon, he had the same drawn payable to Lewis Shively by their direction; that for the same reason he had said note drawn to himself,

and then endorsed the same to Lewis Shively; that, by agreement of the parties to this suit, the garnishee permitted the makers to pay off said note while in his hands, and that he holds the money on said note in lieu thereof; "that the money and bill in his hands are the proceeds of the sale of said real estate as above stated, and that the same was garnished in his hands before it had been paid over to Lewis or Amy Shively or either of them, or before any division had been made of said money · between said Lewis and Amy Shively; and he says that said Lewis and Amy Shively are still living together as husband and wife, and still hold said money by the entireties, and that the same is not subject in any way to be attached or garnished for the debt of said Lewis Shively."

The answer shows that the bill of exchange purchased by the agent with the cash received by him in part payment for the real estate was drawn payable to the husband, and that the note representing the remainder of the proceeds of the sale was made payable to the agent and by him was endorsed to the husband. For what period it was expected the wife would remain absent from California, is not shown. Her absence may not have furnished so plausible a reason for endorsing the note (due in one year) to the husband as for causing the bill of exchange to be drawn payable to him. We assume, however, that it appears sufficiently that all that the agent had done, relating to the proceeds of the sale, was done to transfer the proceeds to the husband and wife, and that, at the time of the service of the writ of garnishment, the agent held the proceeds for both the husband and the wife, no part thereof having been paid over to either of them, and no division having been made between them.

When husband and wife receive real estate by the same conveyance, they hold it as tenants by entireties. Under the fiction of the unity of husband and wife, they do not hold by moieties, but both and each hold the entirety. Neither can sever the tenancy. Upon the death of either, during

coverture, the survivor does not take by the *jus accrescendi* of joint tenants, but continues to hold the whole by virtue of the original estate.

At common law, during the coverture, the husband had his estate *jure uxoris*; he was entitled to the use and control of the property, and the wife had no control over it. The husband could lease, convey or mortgage it at his pleasure, and it might be taken on execution against him; but upon his death, leaving the wife surviving, it went to her unaffected by his acts. *Den* v. *Hardenburgh*, 5 Halsted, 42 (18 Am. Dec. 371) ; *Hemingway* v. *Scales*, 42 Miss. 1 (2 Am. R. 586) ; *Buttlar* v. *Rosenblath*, 42 N. J. Eq. 651 (59 Am. R. 52) ; 28 Alb. L. J. 87 ; Freeman Ex. 186.

This peculiar tenancy is based upon the marital unity. In case of the absolute divorce of the tenants by entireties they become either tenants in common or joint tenants. *Lash* v. *Lash*, 58 Ind. 526.

Our statute provides that conveyances and devises of lands, or of any interest therein, made to two or more persons, shall be construed to create estates in common, and not in joint tenancy, unless the contrary intent be indicated, except conveyances to husband and wife, and thereby expressly indicates the purpose of the Legislature not to abolish estates by entireties in lands. Sections 2922, 2923, R. S. 1881 ; *Bevins* v. *Cline*, 21 Ind. 37 ; *Davis* v. *Clark*, 26 Ind. 424 ; *Jones* v. *Chandler*, 40 Ind. 588 ; *Hulett* v. *Inlow*, 57 Ind. 412 ; *Carver* v. *Smith*, 90 Ind. 222 ; *Dodge* v. *Kinzy*, 101 Ind. 102.

In *Davis* v. *Clark*, *supra*, the question was presented whether real estate held by husband and wife as tenants by entireties could be subjected to sale on execution against the husband. It was held that whatever was the rule in this regard at common law, the matter was controlled by our statutes, reference being made to the statute which went in force May 6th, 1853 (section 5116, R. S. 1881), providing that " No lands of any married woman shall be liable for the

debts of her husband; but such lands, and the profits there-
from, shall be her separate property, as fully as if she was
unmarried: *Provided,* That such wife shall have no power
to encumber or convey such lands, except by deed in which
her husband shall join," and the statute in force since the
same date (section 5128, R. S. 1881), providing that " The
separate deed of the husband shall convey no interest in the
wife's lands." It was held that no act or conveyance of the
husband, or sale on execution against him, could affect or
divest the seizin or use of the wife. See, also, *Chandler* v.
*Cheney,* 37 Ind. 391; *Morrison* v. *Seybold,* 92 Ind. 298.

In *Carver* v. *Smith, supra,* which was an action to en-
join the sale, on execution against the husband, of land
conveyed to the husband and wife, it was held that the leg-
islation of 1881, respecting the rights of married women, did
not abolish estates by entireties. And in *Dodge* v. *Kinzy,
supra,* decided in 1884, it was held that there had not been
any repeal of the common law rule governing conveyances
of real estate to husband and wife.

In *Patton* v. *Rankin,* 68 Ind. 245, it was decided that a
crop raised by a husband on land held by him and his wife
as tenants by entireties was not subject to levy and sale on
an execution against the husband. The court referred to pre-
vious decisions, that the land was not subject to sale on ex-
ecution against the husband, and that he could not, by his
conveyance or mortgage, deprive the wife of the joint enjoy-
ment during their joint lives, or the right of survivorship,
and that the rents and profits of land belonging to a married
woman can not be sold on execution against her husband,
without her consent. It was there said: " We now decide
that a crop, raised on land held by husband and wife by en-
tireties, is held by them in the same manner, and subject to
the same law as the land itself; and such crop is, therefore,
not subject to levy and sale on an execution against the hus-
band."

The effect of this decision is that the wife is entitled to

the enjoyment of the land while it is held by her and her husband as tenants by entireties, and that the taking of the crop, without her consent for her husband's debt, would be an invasion of such right,—an interference with her rights as a tenant of the entirety.   The decision does not reach the case of a voluntary sale and conveyance of the land by the husband and wife for money or other personal property.   By such a sale and conveyance, the husband and wife cease to have any estate in the land, and it is not necessary to treat the proceeds of the sale as being held by them in the same manner, and subject to the same law in order to secure to either of them the enjoyment of the land.   Neither is entitled longer to enjoy the land as such.   Having lost their estate in the land, not involuntarily or by any proceeding *in invitum*, but by their voluntary conveyance, the personalty received therefor must be regarded not as land, but as personal property.

It has sometimes been asserted, and again denied, that at common law husband and wife may hold personal property as tenants by entireties.   We will not take space to review the cases referred to by text-writers in their discussions upon this subject.

At common law the wife's personal property in possession, whether owned by her at marriage or received during coverture, became the property of the husband absolutely.   This was true of all her personalty in possession, whether held by her or by another not adversely to her.

In *Mahoney* v. *Bland*, 14 Ind. 176, it was held that at common law, where real estate of the wife was sold by the husband and wife, the money or personal property received therefrom by the husband vested absolutely in him.   This rule, it was held, was not changed by our statute of 1853 providing that the personal property of the wife held by her at the time of her marriage or acquired during coverture by descent, devise or gift should remain her own property to

the same extent and under the same rules as her real estate so remains. See, also, *Lichtenberger* v. *Graham*, 50 Ind. 288.

In *Farmers, etc., Bank* v. *Gregory*, 49 Barb. 155, it was decided that where real estate held by husband and wife as tenants by entireties was voluntarily converted by them into money, undoubtedly the money belonged to the husband exclusively by virtue of his marital rights.

The husband, at common law, had the right to reduce the wife's choses in action to possession, at any time during coverture. When so reduced he held the property so brought into possession as his own absolutely. But, if this right to reduce to possession were not exercised during coverture, it ceased at the termination of the marital union, and the choses in action survived to the wife in her own right.

There are many cases in which the wife's right of survivorship has been recognized in choses in action payable to husband and wife. At common law the wife's interest in a chose in action payable to her and her husband was liable to be destroyed, and her right of survivorship was liable to be defeated by the husband during coverture. A like power did not exist in relation to her estate in land held by her and her husband as tenants by entireties. Neither could sever the estate or defeat the other's right of ownership. In *Coppin* v ————, 2 P. Wms. 496, a bond given to husband and wife during coverture, on the husband's death first, it was said, would survive to the wife, "as all other joint choses in action do, though it is true, in this case, the husband may disagree to the wife's right to it, and bring the action on the bond in his own name only, but till such disagreement the right to the bond is in both the husband and the wife, and shall survive."

A note made payable to husband and wife survived to the wife because it had not been reduced to possession by the husband. *McMillan* v. *Mason*, 5 Coldw. 263 (98 Am. Dec. 401).

A promissory note or other evidence of debt made paya-

ble to husband and wife, and not collected by him in his lifetime, it was held, upon the death of the husband, would survive to the wife and she would take the proceeds, unless the interest of creditors was affected. *Johnson* v. *Lusk*, 6 Coldw. 113 (98 Am. Dec. 445).

" In such case the form of the security implies the design of the husband to benefit the wife ; and the law will give effect to this intention where the interest of creditors is not affected." 98 Am. Dec. 445.   See,also, *Wilder* v. *Aldrich*, 2 R. I. 518.

Perhaps husband and wife have sometimes been spoken of as tenants by entireties of such personal property with the intention, by such designation, to reconcile the existence, during coverture, of the like interest of both (though so subject to the husband's power) with the idea of marital unity. We are not so much concerned with a name as with the true interests and rights of the parties.

In *Abshire* v. *State, ex rel.*, 53 Ind. 64, promissory notes made payable to husband and wife had been given in 1852 as consideration for the wife's separate real estate then sold by them.   The wife died in 1856, leaving the husband and children surviving, some of the notes remaining unpaid. It was held that the surviving joint payee, the husband, took the notes by survivorship.   The doctrine of survivorship in such a case was spoken of as being kindred to that of estates by entireties, which it was said do not exist in reference to personal property.   It was said that the real estate when sold voluntarily with her consent became personalty ; that the transmutation of her separate real estate into personalty divested her of her separate estate therein.   The court did not advert to the question as to the effect of the execution of the notes prior to the enactment of the statute of 1853 relating to the personal property of married women, but said that as the notes did not belong to her at the time of her marriage and were not received by devise, descent or gift during coverture, she could not hold them as her separate

personal property, under the statute of 1853, which it was held left in force the common law rule in reference to personal property not acquired in one of the modes indicated in the statute.

In *Ireland* v. *Webber*, 27 Ind. 256, decided in 1866, it was held that the husband would not become the owner of the personal proceeds of the sale of the wife's separate real estate without the possession of the husband, with intention on his part to claim the property as his own, and the wife's consent thereto, either express or implied.

In 1881 a statute was enacted, the first section of which is as follows (section 5115, R. S. 1881) : "All the legal disabilities of married women to make contracts are hereby abolished, except as herein otherwise provided."

The second section (section 5117, R. S. 1881) provides : "A married woman may take, acquire, and hold property, real or personal, by conveyance, gift, devise, or descent, or by purchase with her separate means or money ; and the same, together with all the rents, issues, income, and profits thereof, shall be and remain her own separate property, and under her own control, the same as if she were unmarried. And she may, in her own name, as if she were unmarried, at any time during coverture, sell, barter, exchange, and convey her personal property ; and she may also, in like manner, make any contracts with reference to the same ; but she shall not enter into any executory contract to sell or convey or mortgage her real estate, nor shall she convey or mortgage the same, unless her husband join in such contract, conveyance, or mortgage : *Provided, however,* That she shall be bound by an estoppel *in pais,* like any other person."

There is no provision of the statute altering the effect of the two sections above quoted, so far as they are applicable to the facts of this case. Section 5117 above quoted is not a limitation upon the general power to make contracts concerning her personal property, conferred by said section

5115. See *Rosa* v. *Prather*, 103 Ind. 191 ; *Arnold* v. *Engleman*, 103 Ind. 512.

All common law disability of a married woman to acquire and to dispose of personal property, and to make contracts with reference to her personal property, so far as such disability could have affected such a case as this, is abolished.

By section 254, R. S. 1881, a married woman may sue alone, when the action concerns her separate property, or when the action is between herself and her husband.

Certainly the legal existence of the wife, separate from that of her husband, is recognized in respect to her personal property. There is no reason, based upon the idea of marital unity, why she and her husband may not hold personal property in possession or choses in action separately or together as if they were not married.

Where possession of the personal property of the husband and wife is taken by the husband, he should be presumed to take for a purpose consistent with the wife's interest, and should be regarded as holding the property for her as well as for himself. By agreement with the wife, he may take it as his own, and use it accordingly.

We have assumed in this case that it is sufficiently shown that the note and bill represent the proceeds of the sale still regarded by the husband and wife as the property of both. We think that the facts, that the owners of this personal property are husband and wife, and that it represents the still undivided proceeds of real estate owned by them as tenants by entireties, do not affect the right of the appellant. The interest of the wife, who is not a party to the proceedings in attachment, is not like the interest of a partner in a debt due to the firm. The note and bill were in the name of the husband and in the possession of the agent. The interest of the wife is definitely shown, being a moiety of the proceeds of the sale of the land. Our statute (section 931, R. S. 1881) provides that any person having property of the attachment defendant of any description in his possession or

under his control, which the sheriff can not attach by virtue of the order of attachment, or being indebted to the attachment defendant, or having the control or agency of any property, moneys, credits or effects, may be summoned as garnishee.

We are of the opinion that the interest of the husband might be subjected to the payment of his separate indebtedness under the proceedings in attachment and garnishment.

The judgment is reversed, and the cause is remanded with instruction to sustain the appellant's demurrer to the fifth paragraph of the answer of the appellee Walter J. Quick.

