ANDERSON BANKING COMPANY *v.* GUSTIN ET AL.

[No. 12,020.    Filed January 29, 1925.    Rehearing denied April 23, 1925.    Transfer denied January 8, 1926.]

1. MORTGAGES.—*Each of two mortgagees held to own undivided half interest in the notes and mortgages.*—Where notes executed to husband and wife were secured by a mortgage to them, each was the owner of an undivided half of said notes and each had an undivided half interest in the mortgage. p. 107.

2. MORTGAGES.—*Assignment of part of notes secured by mortgage operates as an equitable assignment pro tanto of mortgage.*—The assignment by the payees of a part of the notes secured by a mortgage constitutes an equitable assignment *pro tanto* of the mortgage and a subsequent assignment of such notes by the assignee transfers the latter's interest in the mortgage to the transferee.    p. 107.

3. MORTGAGES.—*Satisfaction of mortgage on record by mortgagees after their assignment of notes secured thereby releases the mortgage except as to innocent purchasers for value without notice.*—A satisfaction of a mortgage on the record by the mortgagees after they have assigned the notes secured thereby, though wrongful, destroys the mortgage except where there is no assignment of record and the mortgage is transferred to a purchaser for value without notice.    p. 107.

4. MORTGAGES.—*Release of mortgage by one of two mortgagees held to deprive assignee of mortgage notes of so much of her equitable interest in mortgage as secured undivided half of each of said notes, as to innocent third parties.*—Where mortgagees' assignment of notes secured by mortgage was not of record, a release of the mortgage by one of the mortgagees who was the owner of an undivided half interest in the notes and mortgage operated as a release of so much of an equitable assignee's interest in the mortgage, as to innocent third parties, as secured an undivided half of said notes.    p. 107.

5. MORTGAGES.—*Satisfaction of mortgage held not to affect wife's interest therein.*—Satisfaction of a mortgage by husband did not affect his wife's interest in the mortgage where each of them was the owner of an undivided half interest in the mortgage. p. 107.

6. MORTGAGES.—The purchaser of notes secured by mortgage cannot rely on the representation that the mortgage is a first mortgage when the public records show the contrary. p. 107.

7. PRINCIPAL AND AGENT.—*Statement to mortgagee by husband of holder of notes secured by mortgage held not to authorize former to surrender notes and take others in lieu thereof, payable to himself, and secured by junior mortgage.*—The fact that the husband of a holder of notes secured by mortgage, at the time of delivering the notes to the mortgagee to have the interest credited thereon and to extend the time of payment, told the mortgagee to do the best he could with the mortgagor, would not authorize the mortgagee to surrender and destroy the notes and to take other notes in lieu thereof, payable to himself, and secured by a junior mortgage. · p. 108.

From Madison Superior Court; *Willis S. Ellis,* Judge.

Action by the Anderson Banking Company, of Anderson, Indiana, against Alonzo M. Gustin and others to recover on certain notes and foreclose a mortgage securing ·their payment. From a decree foreclosing said mortgage, but subject to a mortgage held by one of the defendants, the plaintiff appeals. *Affirmed.* By the second division.

*Diven, Diven & Campbell,* for appellant.
*Bagot, Free & Pence,* for appellees.

NICHOLS, J.—Action by appellant to recover on five promissory notes executed by appellee Alonzo M. Gustin to appellee Garl W. Surratt aggregating $4,000, and afterwards assigned to appellant for a valuable consideration, and also to foreclose against all appellees a mortgage on real estate executed to secure said notes, and to have said mortgage declared a first lien on said real estate. There was a special finding of facts, substantially as follows:

On August 6, 1919, appellees Surratt and Surratt, husband and wife, were the owners of thirty-five acres of land in Madison county; on said date they listed the same for sale with John Schies, at a price of $6,000 net to them, he to have all over that price for commission.

Said Schies procured a purchaser for said real estate for $8,000 in appellees Gustin, husband and wife, who paid in cash $2,000, and executed their several notes for $6,000, of which the Surratts retained $4,000 and indorsed in blank two one thousand dollar notes and turned the same over to said Schies as his commission, who thereupon transferred them to his wife, appellee Mary E. Schies, by delivery.

Before the maturity of the first note, appellee Alonzo M. Gustin called on appellee Garl W. Surratt and told him that he and his wife would not be able to meet any of the notes at maturity and that some arrangement would have to be made to extend the time of payment of all the notes or they would have to throw up on the trade. Thereafter, appellee Garl W. Surratt called Schies to his office and told him what Gustin had said and that, unless an extension of time could be granted, he would have to reconvey said property, and Surratt then suggested to Schies that an extension of one year be granted on the maturity dates of all of said notes, and told Schies that some arrangement would have to be made. Thereupon Schies turned the two notes over to him for the purpose of having the interest credited thereon, and the time of payment on all of the notes extended, and told him to do the best he could with Gustin.

Afterwards Surratt and Gustin made arrangements between themselves by which Gustin and wife conveyed the real estate back to Surratt and wife, and they then conveyed same to Gustin, individually. (The first conveyance was to Gustin and wife.) Gustin then exe-

cuted two series of notes to Surratt, one series being for $4,000 and numbered from one to five and the other series being for $2,000 and numbered 1A and 2A. Each of these series of notes was secured by a separate mortgage on the thirty-five acres of land, but, by agreement between Surratt and Gustin, the mortgage securing the $4,000 in notes was to be a first mortgage thereon, and the mortgage securing the $2,000 in notes, a second mortgage thereon. Upon the execution and delivery of the last two series of notes and the mortgages securing same to Surratt, he (Surratt) then surrendered to Gustin all of the notes first executed by him and wife as fully paid who thereupon destroyed the same, and Surratt entered satisfaction of the mortgage securing said notes. (We observe, however, that this mortgage was made to Surratt and his wife, and that the wife did not join in the satisfaction thereof.) The mortgage securing notes for $4,000 was recorded at nine o'clock a. m. November 3, 1921, and the mortgage securing the notes for $2,000 which, by agreement between Surratt and Gustin, was to be junior to the other, was recorded at ten o'clock a. m. November 3, 1921. Neither John Schies nor Mary E. Schies ever at any time authorized either Garl W. Surratt or Mary F. Surratt to release of record the original mortgage executed by the said Gustin and Gustin to secure the payment of the two $1,000 notes which had been assigned to the said John Schies by Surratt and Surratt and which had been transferred and assigned by delivery to the said Mary E. Schies by the said John Schies.

Afterwards, and long before maturity, for a valuable consideration and in due course of business, the appellant Anderson Banking Company purchased the notes numbered from 1 to 5 and took an assignment of the mortgage securing same. At the time of purchasing said notes, the said Surratt, payee therein, repre-

sented to appellant that the same were secured by a first mortgage on said real estate and appellant's cashier examined the records in the recorder's office and found the last two mortgages recorded as above set out. At the time, appellant knew of the existence of said series of notes which had been originally executed by the said Gustin and Gustin and a portion of which had been assigned as collateral security by Surratt and Surratt to said bank, and did not make any request for the surrender of said original notes, but made the transaction and purchased said notes upon the personal responsibility of appellee Garl W. Surratt. At the time of the purchase of said notes by appellant, it had no notice or knowledge of any kind or character that any of the original notes had been turned over or assigned to said John Schies or Mary E. Schies, or had been in their possession or that they had ever had any interest whatever therein, or that they had ever been out of the possession of appellees Surratt.

There was no assignment of the original mortgage by the Surratts to John Schies or Mary E. Schies other than that which resulted from the assignment of the two notes indorsed in blank and turned over to John Schies which were secured by the mortgage. No record of any kind was ever made of such indorsement upon any record in the recorder's office of Madison county, nor was any assignment of said mortgage ever recorded in the latter office. On these findings, the court stated a conclusion of law, with other conclusions not herein challenged, that Mrs. Schies holds a mortgage lien against the real estate involved in the sum of $2,271.32, one-half of which sum $1,135.66 is a senior and prior lien on said real estate to appellant's mortgage lien. Judgment was rendered foreclosing appellant's mortgage subject to the lien of one-half of appellee Mrs. Schies' mortgage, to wit: for the sum of

$1,135.66 as stated in the conclusion, from which judgment this appeal.

It will be observed that the notes which had been transferred by the Surratts to Schies and by him transferred to his wife were made payable to the Surrats and that they were both mortgagees in the mortgage securing these two notes. It follows then that each of Surratts was the owner of the undivided half of each of said notes and that they each had an undivided half interest in the mortgage. The assignment by the Surratts of these notes to Schies and by him to his wife operated as an equitable assignment *pro tanto* of the mortgage to the respective parties to whom the notes were successively transferred. *Hough* v. *Osborne* (1855), 7 Ind. 140; *Parkhurst* v. *Watertown Steam Engine Co.* (1886), 107 Ind. 594, 596.

Thereafter, the Surratts had no interest in so much of the mortgage as by the assignment of the notes had been equitably assigned to Schies and by him to his wife, and, of course, no right to release it as to them. But there being no assignment of record, a release by them or either of them of the mortgage, though wrongful, would operate as a release *pro tanto* of the interest of Schies or his wife as to any one who had no knowledge of the equitable assignment. Surratt did release the mortgage, and thereby Mrs. Schies lost so much of her equitable interest in the mortgage, as to innocent third parties, as secured the undivided one-half of each of the notes held by her. This Mrs. Schies concedes. But Mrs. Surratt did not release her interest, and the satisfaction of the mortgage by her husband in no way affected her interest. *Howe* v. *White* (1904), 162 Ind. 74, 69 N. E. 684. What motive she had, if any, in not so doing, does not appear. It may have been for the purpose of protecting Mrs. Schies as to her equitable interest therein. Appellant

could not rely on the representation that the mortgage assigned to it was a first mortgage when a public record showed to the contrary. *Adkins* v. *Adkins* (1874), 48 Ind. 12. Appellant says that if Mrs. Surratt was contending that she had a lien by virtue of the original mortgage superior to the lien of the appellant, there might be some merit in her contention, as the record shows no release of said mortgage by her. We fail to see why Mrs. Surratt would have a superior lien had she still retained the notes and yet Mrs. Schies, to whom the mortgage was thereby equitably assigned *pro tanto*, could not have the benefit of the same superior lien, so long as the mortgage was unreleased of record and thereby appellant had full knowledge that the mortgage was outstanding.

It appears by the special findings that Schies delivered his wife's notes to Surratt for the purpose only of having the interest credited thereon, and of having the time of payment extended. The fact that, at the time, he told Surratt to do the best he could with Gustin must be construed to mean within the compass of the purpose for which the notes were delivered. Certainly, it cannot be construed as giving authority to Surratt to surrender and destroy the notes which belonged to Mrs. Schies, and to take in lieu thereof other notes payable to himself and secured by a junior mortgage. *Robinson* v. *Anderson* (1886), 106 Ind. 152.

The court did not err in its conclusions of law.

The judgment is affirmed.

Enloe, J., dissents.