SALVATION ARMY, INC., ET AL. *v* HART, ETC., ET AL.

[No. 29,740. Filed December 9, 1958.]

1

*Forrest M. Condit, Charles H. Sparrenberger* and *Fine, Hatfield, Sparrenberger & Fine,* all of Evansville, for appellants.

*Clifton L. Markel* and *William L. Mitchell,* both of Evansville, for appellees.

ARTERBURN, J.—In this appeal two actions have been consolidated for review. They come to us upon transfer from the Appellate Court.

The first question presented for our consideration deals with the construction of the will of Charles L. Hart and the operation of its provisions after his widow elected to take her share at law and thereby renounced the provisions made for her in the will. The will created a trust in event the widow survived. The income

therefrom was to be paid to Mrs. Hart during her life after paying $500.00 per month to a sister, Effie M. Baker, and $50.00 per month to Laura Dugan during their respective lives. Upon the death of the last survivor the assets in the trust under the will, vested in the appellants in the proportions specified.

The trial court held under the provisions of the Probate Code that the widow's election did not accelerate the remainder interest and that she received (in addition to the one-third at law) a life estate and income from the trust remaining as heir and next of kin for the reason it was intestate property.

The case was tried on a stipulation of facts as follows:

(The will of Charles L. Hart, deceased.)
"I, Charles L. Hart, a resident of the City of Boonville, Warrick County, Indiana, being of sound and disposing mind and memory, do hereby make, publish and declare this to be my last will and testament hereby revoking all former wills by me heretofore made.

"Item I:—. . .

"Item II:—I hereby direct that any and all inheritance, estate and succession taxes and duties levied or assessed against my estate or any of my beneficiaries, or beneficiaries of the trust hereinafter created shall be paid by my executor out of the general assets of my estate.

"Item III:—. . .

"Item IV:—. . .

"Item V:—If my wife, Grace Hart, shall be dead at the time of my death, then, in that event, I hereby give, devise and bequeath all the rest, residue and remainder, after only the payments provided for in Item I and Item II hereof, and the payment of the bequests provided for in Item III, and Item IV hereof, of all my property, of every kind and description, of which I may die seized or possessed, to the following organizations:

"An undivided 2/5 interest to the Salvation

Army, Inc., an Indiana corporation organized under the laws of the State of Indiana;

"An undivided 3/10 interest to Flanagan's Boys' Home, a Nebraska corporation, organized under the laws of the State of Nebraska;

"An undivided 3/10 interest to Berea College, Berea, Kentucky; to be held absolutely and in fee simple forever, but charged, and charged only, with the lien and obligation of said organizations, to pay to my sister, Effie M. Baker, of Warrick County, Indiana, if she shall survive me, the sum of Five Hundred Dollars ($500.00) per month from the time and date of my death so long as she, my said sister, shall live and to pay to Laura Dugan, now of Boonville, Indiana, if she be living at the time of my death, the sum of Fifty Dollars ($50.00) per month from the time and date of my death so long as she, said Laura Dugan, shall live.

"Item VI:—If my wife, Grace Hart shall survive me and be living at the time of my death, then, and in that event, I hereby give, devise and bequeath all the rest, residue and remainder, after only the payments provided for in Item III and Item IV herein, of all my property of every kind and description, of which I may die seized or possessed, to my wife, Grace Hart, and to her successor or successors, as trustee, and in trust, upon the terms and conditions hereinafter set out, to-wit:

"1. This trust shall be for the term of and shall continue for the lifetimes of my wife, Grace Hart, my sister, Effie M. Baker, and Laura Dugan, and the survivor of them.

"2. . . .

"3. . . .

"4. The trustee shall, from the time of my death, and thereafter so long as my sister, Effie M. Baker, shall live, pay to, or for, or for the benefit of, my said sister, Effie M. Baker, the sum of Five Hundred Dollars ($500.00) per month, the said payments, and the total thereof, to be paid out of and charged against the corpus of this trust estate, and the trustee shall, from the time of my death, and thereafter, so long as Laura Dugan, now of Boonville, Indiana, shall live, pay to or for the

benefit of, the said Laura Dugan, the sum of Fifty Dollars ($50.00) per month, the said payments, and the total thereof, to be paid out of and charged against the corpus of this trust estate.

"5. . . .

"6. . . .

"7. All costs and expenses, of every kind and description, of the trust estate and the administration thereof, throughout the entire term of the trust, shall be borne by the corpus of the trust estate and charged against and paid out of the corpus, and not the income, of the trust estate, with the intention and to the end that the gross earnings, income and profit from the corpus shall be and remain also the net income, earnings, and profit, for the benefit of my said wife, Grace Hart, as beneficiary of the earnings, income and profit.

"8. . . .

"9. At the end of each year the trustee shall account for and pay to my wife, Grace Hart, any and all surplus of earnings for said year not previously paid to her during said year as long as she, said Grace Hart, shall live during the term of this trust, but if the said Grace Hart shall die before the end of this trust, then, and thereafter, any and all earnings of each year shall become a part of the corpus of said trust estate.

"10. Upon the death of the last survivor of the said Laura Dugan, my said sister, Effie M. Baker, and my wife, Grace Hart, the trustee shall pay, deliver and account for all remaining corpus and any accumulated income of said trust estate to the following organizations:

"An undivided 2/5 interest to the Salvation Army, Inc., an Indiana corporation organized under the laws of the State of Indiana;

"An undivided 3/10 interest to Father Flanagan's Boys' Home, a Nebraska corporation, organized under the laws of the State of Nebraska;

"An undivided 3/10 Interest to Berea College, Berea, Kentucky;

to thereafter be theirs absolutely and in fee simple forever, free and discharged of any trust of any kind whatsoever.

"11. . . .

"12. . . .

"Item VII:—. . .

"Item VIII:—. . .

"In Witness Whereof, I have hereunder set my hand and seal this 11th day of September, 1951, A.D.

"Charles L. Hart    (Seal).

. . . . . . . . . .

"That the said Grace B. Hart is the widow of Charles L. Hart; that at the time of the death of the said Charles L. Hart, he was survived by neither parent nor descendant, and that the said Grace B. Hart, as such widow, is the sole and only heir at law and next of kin, for the purposes of taking any intestate property. That on March 22, 1954, the said Grace B. Hart was duly appointed the Personal Representative of said estate, gave bond and duly qualified. That the said Grace B. Hart, as the widow of said decedent, elected to take under the laws of the State of Indiana; and that her election is in the words and figures as follows, to-wit:

. . . . . . . . . .

"It is further stipulated that the Inventory filed in said estate showed, exclusive of the personal property in controversy, a gross estate in excess of Three Hundred Thousand Dollars ($300,000.00).

"It is further stipulated that Effie M. Baker is Eighty-seven (87) years of age and is still living, and that Laura Dugan is Seventy-four (74) years of age and is still living.

"It is further stipulated by and between the said parties that should the Court determine said petition unfavorable to the Petitioners and in the event of an appeal to the Appellate Court of the State of Indiana and any petition subsequently filed to transfer to the Indiana Supreme Court may and shall be without bond on the part of either party, and that the parties will endeavor to expedite said appeal and that all matters which arise out of said estate and which have been determined by the said Warrick Circuit Court, and for which an appeal

has been prayed, may be joined in one appeal with a combined transcript and that the issues presented may be presented to the Appellate Court in one brief.

"It is further stipulated by and between said parties that neither party will file in either the Appellate Court of the State of Indiana or the Indiana Supreme Court a motion to dismiss any appeal which may be taken, but that each of said parties will endeavor to have the Appellate Court determine the questions presented on their merits and so as to determine the law of the case."

The appellants contended that "where the life tenant elects to take under the law, the remainders are accelerated and come into being immediately upon the election being taken."

It is recognized that prior to the time the new Probate Code became effective, Indiana did not follow the general rule of acceleration as contended, but it is urged it was the intention of the Legislature to adopt the well recognized rule of acceleration of remainders and it should be applicable in this case. It is agreed the new Probate Code applies to this case. The provisions of the Code relating to the problem here are as follows:

§6-301, Burns' 1953 Repl. (Acts 1953, ch. 112 Paragraphs (c) and (d)) provides:

"(c) In electing to take against the will, the surviving spouse is deemed to renounce all rights and interest of every kind and character in the personal and real property of the deceased spouse, and to accept such elected award in lieu thereof.

"(d) When a surviving spouse elects to take against the will, he shall be deemed to take by descent, as a modifixed [modified] share, such part of the net estate as does not come to him by the terms of the will. Where by virtue of an election pursuant to this article, . . . it is determined that such spouse has renounced his rights in any devise, either in trust or otherwise, the will shall be construed with respect to the property so devised to

him as if such surviving spouse had predeceased the testator."

Sec. 6-104, Burns' 1953 Repl. provides as follows:

"The report of the Probate Code study commission made pursuant to the provisions of chapter 302 of the acts of the 86th Session and chapter 347 of the acts of the 87th Session of the General Assembly of the state of Indiana may be consulted by the courts to determine the underlying reasons, purposes and policies of this act, and may be used as a guide in its construction and application. [Acts 1953, ch. 112, §104, p. 295.]"

The Commission's Comments read as follows:

"(c)   Provides that the acceptance of the elected award constitutes a renunciation of the devises under the will and a taking in lieu thereof.

"(d)   Provides that when a surviving spouse elects to take against the will, that he shall be deemed to take by descent, as a modified share, the part of the net estate which he may receive over and above that which he receives (specific bequests) under the will.

"Where the surviving spouse elects to take against the will, he in effect renounces the provisions made for him in the will. The question is,— what is the status of this rejected property. This subsection provides that regardless of whether it was a devise in trust or otherwise it shall be dealt with and disposed of the same as though the surviving spouse had predeceased the testator."

Appellants say that so far as the operation of the will is concerned, the widow is "constructively" considered as predeceasing her husband by her election to take at law and therefore "Item V" of the will is effective. Item V provides that if the widow does not survive the testator the assets which would otherwise go into trust shall vest in the appellants subject to the lien or charge to pay the sister, Effie M. Baker $500 per month and Laura Dugan $50 per month.

However, the provision in the code is not as broad in application as argued. It says where a spouse has renounced her rights, "the will shall be construed with respect to the *property so devised to him (or her)* as if such surviving spouse had predeceased the testator." (Our italics).

It does not say that any property, *other than that devised to her,* shall be treated as if she predeceased her husband. The terms of the will should be preserved so far as possible. The contention that she predeceased her husband is a construction to be given to no other terms of the will and no other property is to be changed in its disposition.

It may be stated as a general proposition that it is the law that when a spouse renounces the benefits of a will, that the interest of no other person taking under the will or any interest in a trust shall be disturbed, or changed in any respect if such can be avoided. The intentions of the testator are carried out in so far as possible. *Jones* v. *Jones* (1925), 84 Ind. App. 176, 149 N. E. 108; 57 Am. Jur., Wills, Sec. 1549, p. 1054; 4 Page on Wills, sec. 1390 n (16), p. 94.

One could subscribe to the argument for an acceleration were the widow the only interested person or beneficiary under the trust upon her renunciation of the provisions made for her but Effie M. Baker and Laura Dugan have an interest in keeping the trust in operation rather than have a mere charge on assets, which may be taken out of this jurisdiction upon acceleration of the remainder interest. A remainder interest will not be accelerated if the interest of a beneficiary in the intervening life estate is altered thereby. *In re Skinner* (1941), 230 Iowa 1016, 300 N. W. 1, 136 A. L. R. 907; *In re Estate of Maris* (1930), 301 Pa. 20,

151 Atl. 577, 70 A. L. R. 1330; 54 Am. Jur., Trust, sec. 100, p. 92; 164 A. L. R. 1442.

The consequences of an acceleration are made clearer if we assume the beneficiaries were to receive a percentage of the income instead of a fixed sum, yet their legal interest in the preservation of the trust is the same whether the income is a stated amount or a share of the income.

It is argued, however, that the testator provided in his will for the contingency that his wife might predecease him. That is true. However, in actuality, she did not, and we have no right to thwart his will in that respect by the construction of a fiction which under the statute is applicable only to the property devised to the wife and no one else.

All constructive or fictitious assumptions in law are forced by necessities to reach an equitable or just result and are never indulged in or raised when doing so perverts the ends of justice. A "constructive death" should be limited strictly to the evil intended to be remedied. It is apparent that the purpose of the Probate Code in creating such a fiction as to the death of a spouse who rejects the benefits of a will and takes at law, is to prevent such spouse from taking any more than the statutory share. The Code could not be plainer.

"(c) In electing to take against the will, the surviving spouse is deemed to renounce all rights and interest of every kind and character in the personal and real property of the deceased spouse, and to accept such elected award in lieu thereof." Burns' Sec. 6-301, 1953 Repl.

Henry's Probate Law and Practice arrives at the same intepretation in regard to the effect of an election:

"If there is a residuary clause, the residuary legatee would take, unless the spouse was also the residuary legatee, in which case the property would pass by intestacy, but the spouse would not take as an heir.

"Also, the spouse, electing not to take under the will, would not take by descent, any property not devised by the will. He would instead take only the share allowed by statute." 2 Henry's Probate Law and Practice, 6th ed., chap. 30, sec. 18, p. 1582; *Kane* v. *Schofield* (1947), 332 Ill. App. 505, 76 N. E. 2d 216.

The cases cited by the appellees to the contrary, were decided prior to the effective date of the Probate Code, which specifically states that the widow shall be deemed to renounce "all rights and interest of *every kind and character* in the personal and real property of the deceased" (our italics) in event of an election to take her share at law. *Wilson* v. *Moore, et al.* (1882), 86 Ind. 244; *Rocker* v. *Metzger* (1908), 171 Ind. 364, 86 N. E. 403.

Under the prior law the will of the testator could be in some cases practically thwarted in its entirety by an election to take at law. The widow was encouraged in that direction to take her third share and also salvage from the ensuing wreckage all the resulting intestate property in certain situations. It was the rule of "have your cake and eat it." Acts 1907, chap. 48, sec. 1, p. 73.

No doubt, careful draftsmen should avoid such results in event of an election to reject the terms of a will, but few wills are so carefully drawn.

We hold that the trust created under the will did not fail by reason of a fictitious death of Mrs. Hart, prior to her husband upon her renunciation of the will. She will take only a statutory share of the estate, and no more, since she "is deemed to renounce all rights and interest of *every kind and char-*

*acter* in the personal and real estate of the deceased spouse and to accept such elected award in lieu thereof." The trust with such assets as remain therein, continues with its accumulations for the benefit of all interested parties except the widow.

The will provides (Item VI) that "all the rest and residue" shall go into the trust. Thus there is no intestate property. It further provides that upon ■ the termination of the trust "all remaining corpus and any accumulated income of said trust estate" shall go to the appellants at such time.

Under the provisions of the Probate Code it also follows that the benefits of Item II of the will, relative to the payment of all inheritance and estate taxes ■ out of the general assets of the estate, will not apply to the statutory share taken by the widow since she renounced all benefits under the will. *Merchants Nat. Bk. & Tr. Co.* v. U. S. (1957), (C. C. A. 7th) 246 Fed. 2d 410; *In re Est. of Donovan* (1951), 409 Ill. 195, 98 N. E. 2d 757; 29 A. L. R. 2d 215; *Murphy* v. *Murphy* (1936), 125 Fla. 855, 170 So. 856; *In re Uihlein's Will* (1953), 264 Wis. 362, 59 N. W. 2d 641, 38 A. L. R. 2d 961.

Upon the issues raised on appeal from objections made to the final report, we adopt and approve the language of the Appellate Court, which begins with the recital of the stipulations as follows:

" 'It is stipulated by and between the Objectors herein, namely, Salvation Army, Inc., Father Flanagan's Boys' Home and Berea College, and Grace B. Hart, individually, and as Personal Representative of the Estate of Charles L. Hart, Deceased, that the aforesaid parties are all of the interested parties relative to the Second Supplement to the Partial Final Account filed herein by the said Grace B. Hart, as Personal Representative of said estate and that all of said parties appear by counsel.

" 'It is further stipulated by and between the parties hereto that the said Grace B. Hart is the duly appointed acting and qualified Personal Representative of the Estate of Charles L. Hart, Deceased; that she is the surviving widow of said Charles L. Hart; that the photostatic copies attached to the said Second Supplement to the Partial Final Account, hereinabove referred to, are true and correct copies of the instruments referred to in said account except those that are unavailable, and they further stipulate that the description of such instruments set out in said Second Supplement to the Partial Final Account are correct, and made a part hereof by reference.

" 'It is further stipulated by and between the said interested parties herein that all of said instruments are made payable to Charles L. Hart and Grace B. Hart (some using the word 'or' and some using the words 'and/or') and that none of said instruments provides any express words of survivorship.

" 'It is further stipulated that said instruments set forth in said account, above referred to, were listed in the Schedule for Inheritance Tax under the heading of 'Schedule B-3-Joint Tenancies,' and were in substantially identical description as set out in the aforesaid account, listing after each instrument in separate *colums* as follows:

"Value at Date of Death.

"Entire Interest Decedent's Int.

"1. Note dated October 31, 1953—Principal $2,200.00 — Interest 6% — Payors, Opal Pauline Fuchs and Theodore Fuchs, Jr., Husband and wife —Payee, Charles L. Hart payable in monthly payments of $30.00 first payment November 30, 1953— Secured by real estate mortgage of Opal Pauline Fuchs and Theodore Fuchs, Jr., husband and wife, mortgagors, and payable to Charles L. Hart and Grace B. Hart, husband and wife as mortgagees. Amount due, principal and interest, January 28, 1954.    2166.50    1083.25"

" 'That the foregoing is repeated as to each of the additional instruments, listing the entire interest and decedent's interest in columns and disclos-

ing a total at the conclusion of said loss of $249,-523.69 under the first column and the figures $124,-761.85 under the second *colums,* and that no other explanation was given as to the first forty (40) items, being the aforesaid promissory notes. Items 41 to 53, as disclosed by said Schedule for Inheritance Tax Appraisement, were as follows, to-wit:"

The stipulation then lists thirteen items which included bank deposits, building and Loan Association accounts, government bonds and household furniture, disclosing a total valuation of $52,409.34 under the first column and $26,204.67 under the second column.

" 'It is further stipulated by and between the interested parties, as hereinabove set forth, that for the purpose of the United States Estate Tax Return, the instruments itemized in the accounting, hereinabove referred to, were listed as follows:

" 'Schedule E

" 'Jointly owned Property.

" '(1)    Did the decedent, at the time of his death own any property as a joint tenant or as a tenant by the entirety, with right of survivorship?
.   .   .   Yes   .   .   .   (Answer "Yes" or "No.")
" '(2)    If so, state the name and address of each surviving cotenant.

" 'Grace B. Hart—323 W. Locust Street, Boonville, Indiana.

| " 'Item " 'No. | Subsequent valuation date Description | Value under option | Value at date of death |
|---|---|---|---|

" 'Attached Sheet for Schedule E.

" 'Value at Date of Death.

" 'Entire Interest                              Decedent's Int.

and thereafter Instruments "1" to "52" were itemized identically as with the aforesaid Schedule for Indiana State Inheritance Tax Appraisement and with the same amounts listed in each column. Item 53 was the same as Item 55 and the remaining

Items 53, 54, 56 and 57 referred to real estate owned as tenants by the entireties.

" 'Said parties further stipulate that each of the recorded mortgages referred to in said accounting, which have been released of record, were released by the signatures, "Grace B. Hart, and Grace B. Hart, Administratrix of the Estate of Charles L. Hart, Deceased," or by using the words, "Grace B. Hart and Grace B. Hart, Exec." "(Grace B. Hart, Personal Representative of the Estate of Charles L. Hart)" or "Grace B. Hart, Grace B. Hart (Grace B. Hart, Personal Representative of the Estate of Charles L. Hart)" or "Charles L. Hart Estate, by Grace B. Hart, Exec." or by the words, "Charles L. Hart Estate, Grace B. Hart, Exec." or by using the words "Grace B. Hart, Exec. of Charles L. Hart Estate, Grace B. Hart" and that in none of the said releases did the said Grace B. Hart describe herself as the surviving owner.

" 'It is further stipulated that the promissory notes hereinbefore referred to as Items 1 to 40, both inclusive, or Schedule B-3, Joint Tenancies, in the Inheritance Tax Schedules, were listed in the inventory and appraisement filed in this estate proceeding under Column II of Recapitulation and with the following explanation:

" ' "Column II is the appraised value of certain property, as a whole, submitted and exhibited, by the Personal Representative to the appraisers, and therefore, appraised by the appraisers, not as determined as belonging to deceased, at the time of death, and a part of his estate, but as being undetermined as to ownership and undetermined as whether the deceased owned the same, or any part or interest therein, or, if any undetermined as to what part or interest deceased owned at the time of death or a part of his estate."

" 'It is further stipulated by and between the aforesaid parties that no objections have been raised by the Objectors relative to the fiscal accounting.'

"The same stipulation was made in reference to an appeal to this court or transfer to the Supreme Court that was made in the action for construction of the will, etc.

"In this action the Court found:

" 'That the promissory notes, with the single exception of one made payable to the decedent, individually, survived to Grace B. Hart, surviving payee who, by reason thereof, became and is the owner of said notes to the full extent of the unpaid balance thereof, principal and interest, as of January 28, 1954, the date of death of the decedent; and,

" 'That the said Grace B. Hart, surviving payee of said notes, by reason thereof, became and is, the owner of the security or securities given for said promissory notes, respectively, as of the said date of death of the decedent, with the related right of subjection thereof to the payment of the notes secured thereby.'

"Judgment accordingly.

"Appellants contend the trial court erred in not sustaining their objections to the second supplement to the partial final account. In support of this contention they say 'there were a number of promissory notes (some secured by mortgage which were taken during the lifetime of the decedent and made payable to the decedent and to Grace B. Hart, naming the payee either in the conjunctive or the disjunctive or as both, that is, using the word "and" between the names of the payees, the words "and/or" between the names of the payees and the word "or" between the names of the payees. So far as we are able to ascertain, the use of these different words does not alter the effect. In other words, the effect is the same regardless of the word or words used between the names of the payees.'

"Under the statutes of the State of Indiana and the decisions of the courts of Indiana, it is appellants' position that the survivor took only a one-half interest therein and the other one-half interest therein passed to the estate of the decedent and through it to the beneficiaries named in the will as a part of the decedent's estate.

"Finally they say appellee 'evidenced her election to claim only one-half of the personal property (the notes) by not claiming successive tax purposes in the Petition to Determine Indiana Inheritance

Tax, in the Federal Estate Tax Return and in the execution of receipts or releases cancelling the paid instruments or in the release of the mortgages securing such paid instruments; she is either estopped to deny the ownership by the estate of a one-half interest therein or has waived her right to claim a one-half ownership. In other words, in all her actions other than the inventory filed in said estate, this survivor has elected to take only a one-half interest and has waived her right to claim the other one-half. Nowhere in any action that she has taken prior to the filing of the Second Supplement to the (Partial) Final Report, has she claimed to be the surviving owner of the entire interest.'

"Particular reference is made to the stipulation entered into herein and the cancelled notes as exhibited. Citing §7-821 Burns' 1953 Repl.

"Appellee contends a promissory note is a contract and, where it is made payable to two or more persons, it is a joint contract. The question of its survival, where one payee dies, to the surviving payee, goes back of the procedure and takes up the element of the right itself. In the case of a joint contract, the whole right, the unified interest, vests in the survivors, and upon them falls the entire right. The principle of the common law, vesting the whole right in the survivors, is not changed by the Code; and so long as the principle remains unchanged the persons possessing the entire right must be regarded as the real parties in interest. She then says: 'Words of survivorship are not necessary to the survival.'

"In support of their contentions appellants cite the following statutes: Sec. 51-104, Burns' 1951 Repl., which provides, in part:

" 'Except as to obligations of the United States government, held jointly or on which there appears a name of the surviving co-owner, the survivor of persons holding personal property in joint tenancy shall have the same rights only as the survivor of tenants in common, unless otherwise expressed in the instrument.'

"Sec. 6-103, Burns' 1953 Repl. provides, in part:

" 'The definitions appearing in this article

[§§6-101—6-123] shall apply to words used in this code, unless otherwise apparent from the context. . .

" ' "Personal property" includes interests in goods, money, choses in action, evidences of debt and chattels real.'

"[4] It is well settled in this state that property held in joint tenancy does not go to the survivor unless the instrument creating the estate so expressly provides. Johnson v. Johnson, 1891, 128 Ind. 93, 96, 27 N. E. 340; Hibbard v. Hibbard, 1947, 118 Ind. App. 292, 299, 73 N. E. 2d 181 (Transfer denied).

"[5, 6] Where, as here, a note or a note and mortgage is made payable to a husband and wife, it is a general rule that they own each an undivided one-half interest, even though the consideration for the note and mortgage is the separate property of the husband. It is presumed the husband intended to make his wife a gift of a one-half interest. Otherwise he would not have had the instrument so drawn. Collyer v. Cook, 1902, 28 Ind. App. 272, 62 N. E. 655; Anderson Banking Company of Anderson v. Gustin, 1926, 84 Ind. App. 102, 107, 146 N. E. 331; Radabaugh v. Radabaugh, 1941, 109 Ind. App. 350, 354, 35 N. E. 2d 114. The foregoing is the majority rule. Newitt v. Dawe, 1943, 61 Nev. 472, 133 P. 2d 918, 144 A. L. R. 1462 and annotations, at pages 1467, 1468.

"In the case of Collyer v. Cook, supra, the facts as stated by this Court were: One William Caldwell owned a farm where he and his wife lived. He sold this farm to Collyer in 1895 who, at the instance of the husband, executed five notes, each for $500, payable in one, two, three, four and five years from date to the order of Caldwell and his wife. Caldwell died on September 2, 1899, and his wife died the next day. The wife's administratrix claimed all of the three remaining notes that were unpaid. Trial court held they owned the notes jointly and each estate was entitled to one-half thereof. This court held these notes were not personal chattels in possession but were choses in action. In affirming the judgment, we said (28 Ind. App. at page 276, 62 N. E. at page 656) :

"To the provision that the survivor of persons holding personal property in joint tenancy shall have the same rights only as the survivor ▪ of tenants in common unless otherwise expressed in the instrument, there is no statutory exception as to husband and wife. Section 8136, Burns' 1901. There being no exception as to husband and wife, the question presented is not controlled by the rules of common law, but by the statute."

"In support of her contention appellee relies on the following authorities: Indiana, Bloomington and Western Railway Company v. Adamson, 1887, 114 Ind. 282, 15 N. E. 5; McIntosh v. Zaring, 1898, 150 Ind. 301, 49 N. E. 164; Fogleman v. Shively, 1891, 4 Ind. App. 197, 30 N. E. 909; Abshire v. State ex rel. Wilson, 1876, 53 Ind. 64. In our opinion the first three cases contain nothing pertinent to the question presented here.

"In the Abshire case, supra, the Supreme Court did hold that when a promissory note was made payable to a husband and wife as a consideration for separate real estate of the wife, on her death the husband took as joint survivor. This holding was apparently based on the old common law but which, as we have seen by the authorities herein cited, no longer applies here.

"In the case of Parrett v. Palmer, 1893, 8 Ind. App. 356, at pages 359, 360, 35 N. E. 713, at page 715, this court, in reaching an entirely different result, said:

" 'In Garner v. Graves, 54 Ind. 188, our supreme court held that notes taken by the husband in his own name in payment for his wife's real estate belonged in equity to her and not to his estate. Whatever language there may be in Abshire v. State ex rel. Wilson, 53 Ind. 64, which would seem, in its literal interpretation, to be inconsistent with these holdings, must be considered with reference to, and limited to, the circumstances of that particular case.'

"In this case, as hereinbefore set out, it was stipulated by the parties that none of the instruments

which are the subject of this action provide any express words of survivorship.

"Upon the authorities cited herein, we are of the opinion the objections of appellants to the Final (Partial) report of appellee should have been sustained." [149 N. E. 2d 566.]

Since the facts are stipulated, a new trial would serve no purpose. The judgment is reversed with directions to enter a judgment in conformity with the law as expressed herein.

Landis, C. J., Achor, Emmert and Bobbitt, JJ., concur.

NOTE.—Reported in 154 N. E. 2d 487.