## ZORICH ET AL. *v.* ZORICH

[No. 17,859. Filed November 21, 1949.]

*Hodges, Ridgely & Davis,* of Gary, for appellants.

*Blaz A. Lucas,* and *Ellis C. Bush,* both of Gary, for appellee.

MARTIN, J.—This action was brought by the appellee Peter Zorich, against his son the appellant Walter Zorich, and his daughter, the appellant Joann Orystick, to establish an express trust in certain U. S. Savings Bonds and in certain Postal Savings Certificates.

The complaint alleged that in January 1942, he had $3,324 and that he directed the appellant Walter Zorich, to buy U. S. Government Bonds in the name of the appellee, which Walter Zorich agreed to do, but that the said Walter Zorich bought the U. S. Government Bonds with such money in his own name; that beginning November 21, 1944, the appellee deposited at different times various sums totalling $2,500 in U. S. Postal Savings in the name of appellant Joann Orystick, which sum the said Joann Orystick agreed to hold in trust for her father, the appellee; that during the years 1944, and 1945, the appellee deposited the sum of $2,076 in Postal Savings in the name of appellant Walter Zorich, which sum the said Walter Zorich agreed to hold in trust for his father.

The appellant Walter Zorich filed a cross-complaint in two paragraphs. The first paragraph of cross-complaint alleged the gift by appellee to him of $2,500 in U. S. Savings Bonds purchased in his name; and secondly, the gift of $2,076 by the appellee to said appellant by the appellee depositing that sum in Postal Savings in the name of appellant, Walter Zorich.

The appellant Walter Zorich, filed a second paragraph of cross-complaint contending that the purchase of U. S. Government Bonds by appellee Peter Zorich, in the name of the appellant Walter Zorich, constituted a contract with the U. S. Government for the benefit of Walter Zorich; that the contract was in force; and that the court neither could nor had any authority to interfere with that contract.

The appellant Joann Orystick, filed a cross-complaint and alleged that beginning in November 1941, at a time when said appellant was a minor, appellee began making gifts to her by depositing money in the post office in her name and in all, $2,500; that the

making of all of such deposits constituted the making of a completed gift.

The decree of the court was in favor of appellee on his amended complaint and against both appellants.

The appellants have assigned as error the overruling of their motion for a new trial. The reasons assigned in the motion for a new trial and now relied upon by appellants are as follows:

(1) That the decision of the court is not substantiated by sufficient evidence.

(2) The decision of the court is contrary to law.

The evidence discloses that the appellee was an illiterate Serbian, 55 years of age who came to the United States in 1907, worked as a laborer in the Gary steel mills since 1911, never went to school in his life; and can not read or write English.

The evidence shows that on the day appellee, Peter Zorich, opened the Postal Savings account in the name of appellant Walter Zorich, while at the post office in the City of Gary and before the account was opened, appellant Walter Zorich agreed that the money should be put in his name and that he would turn the money back to appellee any time appellee wanted it done.

The evidence in substance shows that at the time the first deposit was made in the name of appellant Joann Orystick, the appellee said to her that at any time, that she was to turn the money back to appellee from her name, and put it in his name and Joann said, "Any time you like it Papa."

Thus it appears from the evidence that when the respective Postal Savings accounts were opened in the names of the appellants, there was an agreement between the appellee and the appellants, respectively,

that when appellee wanted the money on the accounts turned back to him it would be done.

The evidence further shows that the $2,500 was deposited in Walter's name in Postal Savings over a period of about two years.

Appellee purchased $3,325 face value of U. S. Defense Savings Bonds on January 31, 1942. These bonds were purchased in the name of Walter alone, in violation of appellee's instructions to Walter to have the bonds put in appellee's name first, and in Walter's name second. It is the position of appellee that these bonds being purchased by trust funds, money that appellant Walter had agreed to hold and turn back to appellee whenever appellee wanted it, were impressed with the same trust and are the property of appellee.

The evidence shows that there was no delivery to appellants of any of the Postal Savings Certificates or Bonds involved in this case.

The Postal Savings Certificates issued from time to time representing deposits made on the account opened in Walter's name on the 5th day of July, 1939, and on the 21st day of January, 1942, converted into the United States Defense Savings Bonds involved in this case were continuously kept by appellee Peter Zorich, in his own possession and under his absolute control and dominion from the instant of the issuance of each certificate until they were converted into the involved bonds on the 31st day of January, 1942. Said bonds were then continuously kept in his exclusive possession and under his control and dominion until the date of the trial of this case. Continuously from the instant of their issuance, each of the Postal Savings Certificates representing deposits on the account in the name of appellant Joann was kept by appellee in his possession and under his dominion and control until the trial of this case.

Continuously from the instant of their issuance, each of the Postal Savings Certificates representing the deposits in the name of appellant Walter Zorich from the 25th day of February 1944, until the 28th day of November 1945, was kept by appellee in his exclusive possession and under his absolute control and dominion until the date of the trial in this case.

Appellants in their brief herein have called our attention to § 2-3229, Burns' 1946 Replacement, which says that this court shall on appeal in non-jury cases, weigh the evidence on trial, and, if it appears from all the evidence that the judgment is not fairly supported by or is against the weight of the evidence, shall award judgment accordingly. It has been repeatedly held, that the above statute does not require this court on appeal to weigh conflicting evidence. *Hitt* v. *Carr* (1928), 201 Ind. 17, 26, 162 N. E. 409 and cases cited; *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 75 N. E. 2d 417.

This court will not weigh the evidence and will consider only that evidence most favorable to the decision of the lower court. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629.

The appellant contends that the deposit of funds by appellee in U. S. Postal Savings and having the certificates issued in the respective names of each of the appellants constituted a complete gift of the funds so deposited and under the pleadings and the evidence the trial court had no authority to decree a trust. In the case of *Crawfordsville Trust Co.* v. *Ramsey* (1913), 55 Ind. App. 40, 66, 100 N. E. 1049 the court said that the following elements are necessary in a gift *inter vivos*. "(1) The donor must be competent to contract; (2) there must be freedom of will; (3) the gift must be completed with nothing left undone; (4) the property must be de-

livered by the donor and accepted by the donee; (5) the gift must go into immediate and absolute effect."

The Supreme Court in the case of *Smith, Adm'r.* v. *Dorsey* (1872), 38 Ind. 451, 10 Am. Rep. 118, said: "To constitute a valid gift *inter vivos* it is essential that the article given should be delivered absolutely and unconditionally. The gift must take effect at once and completely . . . . Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect. A court of equity will not interfere and give effect to a gift that is inchoate and incomplete . . . . An absolute gift, which divests the donor's title, requires the renunciation on his part, and the acquisition on the part of the donee, of all the title to, interest in, the subject of the gift."

The appellee's testimony is that he never intended to give the involved bonds or Postal Savings to the appellants or either of them.

The evidence shows that when the accounts were opened in the Postal Savings accounts they were opened upon the agreement that the money should be turned back to the appellee whenever he wanted it done.

The appellee, at all times, kept all the involved Postal Savings Certificates and bonds in his exclusive possession and under his control and dominion. There was no delivery of any of the Postal Savings Certificates or bonds in this case.

Delivery of the alleged gift must be made with both an intention to give, and a stripping of the donor of all dominion or control over the thing alleged to be given.

The change of the title must be irrevocable. Words alone, unaccompanied by delivery, are not sufficient to constitute a gift, except where the alleged gift is already in the possession of the donee. The delivery must be of possession, of the dominion,

and of the control of the property. The transfer must be so complete that, if the donor again assumes control of the property without the consent of the donee he becomes liable as a trespasser. And so essential is delivery as a factor in the transaction that it has been said; "Intention can not supply it; words can not supply it; actions can not supply it. It is an indispensable requisite, without which the gift fails, regardless of consequences." *Reasner, Admr.* v. *Bohne* (1921), 76 Ind. App. 114, 129 N. E. 490; *First & Tri State National Bank* v. *Caywood* (1932), 95 Ind. App. 591; 176 N. E. 871.

The mere fact that appellee deposited money in the names of the appellants does not make the money so deposited gifts to appellants. The same rule is stated in different language in Corpus Juris Secundum as follows: "The mere fact of the deposit of money in the name of a third person without the delivery of the pass book, or other evidence of intention to make a gift, however, will not constitute a valid gift *inter vivos,* since this may have been done for any one of a number of reasons, each without donative purpose. . . ." 38 C. J. S. 832, and cases cited in notes 77 and 78. The above quotation is quoted with approval in *Ogle* v. *Barker* (1946), 224 Ind. 489, 68 N. E. 2d 550, 556.

There need be no particular form of words to create a trust and such trust may be created orally. *Taber* v. *Zehner* (1911), 47 Ind. App. 165, 93 N. E. 1035, 1037.

We are of the opinion that the evidence shows that all the bonds and Postal Savings Certificates and the money represented thereby have always been and are now held by the appellants in trust for the appellee, pursuant to an oral trust agreement.

The evidence shows that at the time of the trial of this case appellee had on deposit in Postal Savings the sum of $2,500 in the name of appellant Joann, $2,076 in the name of appellant Walter and $1,600 in his own name.

It is the appellants' contention that because appellee had a postal savings account in the name of each of the appellants and at the same time another account in his own name he thereby violated the postal savings law and therefore did not come into court with clean hands and was not entitled to recover in a court of equity.

The sections of the Postal Savings Law that are applicable in this case are as follows:

"*OPENING ACCOUNTS AND MAKING DE-POSITS.* Accounts may be opened and deposits made in any postal savings depository established under this chapter by any person of the age of ten years or over, in his or her own name, and by a married woman in her own name and free from any control or interference by her husband; but no person shall at the same time have more than one postal savings account in his or her own right." 39 U. S. C. A., The Postal Service, § 754, pp. 283, 284.

"*DEPOSITS; A M O U N T; CARDS AND STAMPS FOR SMALL AMOUNTS.* At least $1, or a larger amount in multiples thereof, must be deposited before an account is opened with the person depositing the same, and $1, or multiples thereof, may be deposited after such account has been opened, but the balance to the credit of any one person, upon which interest is payable, shall not exceed $2,500, exclusive of accumulated interest, and noninterest paying deposits shall not be accepted. . . ." 39 U. S. C. A., The Postal Service, § 756, p. 284.

"*JUDGMENT ADJUDICATING RIGHT OR INTEREST IN DEPOSIT.* The final judgment,

order, or decree of any court of competent jurisdiction adjudicating any right or interest in the credit of any sums deposited by any person with a postal savings depository if the same shall not have been appealed from and the time for appeal has expired shall, upon submission to the Postmaster General of a copy of the same, duly authenticated in the manner provided by the laws of the United States for the authentication of the records and judicial proceedings of the courts of any state or Territory or of any possession subject to the jurisdiction of the United States, when the same are proved or admitted within any other court within the United States, be accepted and pursued by the board of trustees as conclusive of the title, right, interest, or possession so adjudicated, and any payment of said sum in accordance with such order, judgment, or decree shall operate as a full and complete discharge of the United States from the claim or demand of any person or persons to the same." 39 U. S. C. A., The Postal Service, § 767, p. 291.

The rule is well stated in 17 C. J. S., § 278, p. 667 that:

"Another distinction is sometimes made in the case of contracts which are simply unauthorized, but involve no moral turpitude and are not expressly forbidden by statute, in which case it has been held that they may be enforced if justice plainly requires it. So, where the contract is merely *malum prohibitum* and the illegality does not arise from any elements of moral turpitude, a recovery may be had of money or property parted with thereunder."

Where a contract is merely *malum prohibitum* and the illegality does not arise from any elements of moral turpitude, a recovery may be had of money or property parted with thereunder. *Chesnutt* v. *Schwartz* (1938), 293 Ill. App. 414, 12 N. E. 2d 912 and cases there cited.

Where contracts which violate statutory provisions are merely *malum prohibitum*, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied. *John E. Rosasco Creameries, Inc.* v. *Cohen et al.* (1937), 276 N. Y. 274, 11 N. E. 2d 908 and authorities there cited.

Counsel for the appellants relies on the case of *A. N. Chamberlain Co.* v. *H. A. Chamberlain Co.* (1909), 43 Ind. App. 213, 86 N. E. 1025. That case involves a principle not material in this case. It is clearly distinguishable in its facts.

The purpose of the Postal Savings system is to encourage thrift and to provide a safe depository for the accumulation of savings. The statute does not expressly provide that a contract such as the trust agreements in question shall be unenforceable and provides no penalty or forfeiture in the event a person has more than one account in his own right at the same time. Appellee's deposits from his earnings as a laborer were quite in line with the express purpose of the system. The government has had his money and now has many times enough in its possession to make any adjustment with respect to interest. The evidence utterly fails to show that anyone has been, or will be defrauded, injured, or damaged in any way. Has the conduct of the appellee in entrusting his hard earned money, his life's savings to the U. S. Postal System been such as would be condemned to the extent that it would warrant a court in declaring the trust agreements unenforceable and require the appellee to forfeit his money to appellants

who never made any deposits in said accounts and have not been injured or damaged thereby? To hold the agreements unenforceable the effect would be to punish the appellee to the extent of a loss of approximately $7,076. Nothing in the statute reveals an implied intent to deprive a depositor of the right to recover the money he deposited and where the wrong committed by the violation of the statute is merely *malum prohibitum,* such punishment should not be imposed unless the legislative intent is expressed or appears by clear implication. It does not appear to us that in order to protect the public policy or to accomplish the purpose of the Postal Savings law that it is necessary that appellee's trust arrangement with appellants should be void.

It is to be observed that § 756 of the Postal Savings law, *supra,* provides the consequences of a person having more than one account or more than $2,500 on deposit at any one time; and that the consequences are merely that interest will not be paid on credits in excess of $2,500 and, that part of said section which reads as follows: "and non-interest paying deposits shall not be accepted". It appears to be directory only to the Postal Savings agents and employees.

Section 767 of the Postal Savings law, *supra,* has declared the courts to be open to any person for the recovery of any right or interest in the credit of any sums deposited by any person with a postal depository. This statute does not limit such right to persons having no Postal Savings account in his name or is the amount that may be recovered to any amount which, when added to the already existing deposits of the claimant, would not exceed $2,500.

We hold there is sufficient evidence to sustain the decision of the court and it is not contrary to law.

The court did not err in overruling the appellants' motion for a new trial.

Judgment affirmed.

Draper, J., not participating.

NOTE.—Reported in 88 N. E. 2d 694.