IN RE ESTATE OF WEGER: WEGER, Appellant, v. ERASMUS, personal representative of the Estate of Weger, deceased, and others, Respondents.*

*No. 611 (1974). Argued December 2, 1975.—Decided February 23, 1976.*

(Also reported in 238 N. W. 2d 522.)

* Motion for rehearing denied, without costs, on April 7, 1976. Memo filed April 26, 1976.

486

For the appellant there were briefs by *David L. Walther* and *Walther & Halling*, all of Milwaukee, and oral argument by *David L. Walther* and *John Sundquist*.

For respondent personal representative there was a brief and oral argument by *Charles C. Erasmus* of Milwaukee.

For respondent Thomas O. Weger there was a brief by *Gaines & Saichek, S. C.*, and *Leo R. Lichter*, attorneys, and *Theodore B. Hertel, Jr.*, of counsel, all of Milwaukee, and oral argument by *Irving D. Gaines*.

DAY, J. The order appealed from renders decisions on several petitions by the parties to declare the status of the property of Herman A. Weger, deceased. There are two principal issues on this appeal: (1) whether the decedent's spouse, Shirley R. Weger, was a joint tenant with the deceased in a vendor's interest in a land contract; and (2) whether the decedent's son, Thomas O. Weger, was a joint tenant with the deceased in certain bonds.

*Land Contract*

Herman A. Weger died intestate on February 25, 1973. At that time, he was owed a balance of $176,735.41 on a land contract resulting from the sale of a motel in 1960. His widow, Shirley R. Weger, petitioned to have herself declared a joint tenant in the vendor's interest in the land contract. The petition was opposed by the personal representative, attorney Charles Erasmus, and by the decedent's son by a prior marriage, Thomas O. Weger. The trial court found that the widow was not a joint tenant, and she has appealed from that ruling.

Shirley Weger married Herman Weger in 1948. She brought to the marriage no personal assets, but later she received $11,000 in settlement of an accident claim, and testified that the money was turned over to her husband for the purchase of the motel land in 1953.

In 1954 Herman Weger constructed a motel on the land and took up residence in part of the motel with his family.

To finance the motel construction the couple executed two notes for $65,000 and $6,500 to a savings and loan association, each secured by a real estate mortgage on the land, and containing a typewritten provision that "Shirley R. Weger joints [sic] in this mortgage for the purpose of mortgaging her dower interest." Herman Weger acted as general contractor during construction of the motel and performed nearly all the bookkeeping and business duties after the motel opened. Shirley also assisted in the day-to-day operation of the motel, particularly during the first year when the decedent had an outside job.

On June 1, 1960, the Wegers entered into a land contract for the sale of the motel premises in which they were described as "sellers, parties of the first part." The

net purchase price was $252,000, payable to the "parties of the first part, their heirs or assigns," in monthly installments of $500 plus interest. The sellers agreed to bind their "heirs, executors, and administrators" to execute a warranty deed to purchasers upon completion of the payments. Contemporaneously, the purchasers executed a chattel mortgage securing payment of the purchase price, covering motel furnishings, to "Herman A. Weger and Shirley R. Weger, his wife."

The land contract was entirely drafted by Charles Erasmus as attorney for Herman Weger. The contract contained no explanation of why Shirley was made a party to the contract. Mr. Erasmus testified that he recalled no instructions from the deceased as to the inclusion of Mrs. Weger. Mr. Erasmus knew that Herman was the sole owner of the motel and, according to his testimony, included Mrs. Weger in the contract for the purpose of compelling her to join in the conveyance when the deed was finally delivered, and to bar her dower interest in the property.

All payments made under the land contract were made to Herman Weger alone, and he never turned over, or accounted for, the proceeds to Shirley in any form. It appears from the record that these payments were put into a savings account that he maintained jointly with his son, Thomas O. Weger. Herman Weger did report the interest on the land contract as being equally divided between himself and his wife on his Wisconsin income tax returns from 1960 through his death.

The law on this subject at the time this transaction took place is governed by the case of *Estate of Fischer* (1964), 22 Wis. 2d 637, 126 N. W. 2d 596.[1] In *Fischer*

---

[1] The situation would now be governed by sec. 700.21 (2), Stats:

"(2) If 2 or more persons are named as covendors in a contract to transfer an interest in property which is owned by less than all of the covendors, the purchase price is payable to the owner or owners of the interest in property to which the contract relates, unless the contract expresses an intent that the purchase price is

a widow petitioned to have herself declared a joint tenant in the proceeds of a land contract in which she had joined. This court held that where a husband is the sole record owner of the land, a rebuttable presumption exists that the wife joined in a land contract only to bar her dower or homestead rights. She cannot claim the status of a joint tenant in the land contract without additional evidence that a joint tenancy was, in fact, intended.

The widow in this case attempts to distinguish the *Fischer Case* on a number of grounds, none of which we find convincing. First, she argues that the *Fischer* presumption does not apply where the wife, by joining in a land contract, releases her homestead rights in the property, rather than her inchoate dower rights. She argues that the statutory requirement that she join in conveyance of the homestead vests in her some present right in the property, a right different and stronger than inchoate dower.[2] However, the plain wording of the statute which refers to "his homestead," can only be interpreted to express a policy that, while a spouse must consent to a homestead conveyance, she is not necessarily a part owner of the property. The *Fischer* opinion does not in any way suggest that where the wife joins in a land contract concerning homestead property rather than nonhomestead property, a different legal implication is raised.

Second, the widow argues that there was evidence sufficient to rebut the *Fischer* presumption that no joint tenancy was intended. *Fischer* requires more than

payable to the covendors as joint tenants or as tenants in common."

[2] At the time of this transaction, sec. 235.01, Stats. 1959, was applicable:

. "No mortgage or other alienation by a married man of his homestead . . . by deed or otherwise, shall be valid without his wife's consent, evidenced by her act of joining in the same deed, mortgage or other conveyance . . . ."

This requirement is now contained in sec. 706.02, Stats.

evidence that some unspecified sharing of the proceeds
to the land contract was intended. There must be evidence showing the specific intention to create a joint
tenancy. In the absence of such specific evidence, a
joint tenancy will not be found. In the present record,
there is no evidence whatsoever that Mrs. Weger and
the deceased intended to, or did, share the proceeds of
the land contract. The deceased was entirely responsible
for the construction and business operation of the motel.
For over twelve years he received payments on the contract and, according to the widow's own testimony,
these were deposited in the National Savings & Loan
account maintained in the name of the deceased and his
son, Thomas. There is no evidence at all that Shirley
ever expressed any interest in the land contract proceeds
or that the deceased ever made any accounting to her of
such proceeds.

She next argues that because she was a joint obligor
on the two mortgage loans taken to finance construction
of the motel, an intention was shown to create a joint
tenancy in the motel property. However, the mortgage
notes specifically state that she joined in them to bar
her dower interest, negating any possible claim to joint
tenant status on this basis.

She also argues that because she was named with
the deceased in a chattel mortgage given by the purchasers to secure payment of the motel, she must have
been a joint tenant in the motel. The record is barren
of any evidence concerning the reason for her inclusion
in the chattel mortgage document. The chattel mortgage
concerned the personal property on the premises only,
and was not involved with the title to the land or the
buildings. Nothing in the chattel mortgage shows an
intent to create a joint interest in the real estate.

Finally, the widow argues, without citing any authority, that the fact that the deceased split the income
from the land contract between himself and her on

the income tax returns, apparently for the purpose of reducing his Wisconsin income tax liability, is evidence of her joint interest in the property. While the income tax returns were not part of the record in this case, we can only conclude that the splitting of income by the deceased was for the purpose of reducing his own tax liability. This would hardly be a basis for a conclusive presumption that, at the time the land contract was entered into, it was intended that it be owned in joint tenancy with his wife.

The trial court's conclusion that the facts do not rebut the *Fischer* presumption, and Mrs. Weger was not a joint tenant in the land contract, is not against the great weight and clear preponderance of the evidence, which we would have to find in order to reverse.

Mrs. Weger argues that even if she was not a joint tenant, a constructive trust should be imposed upon the property because the lots on which the motel was constructed were purchased at least in part with the $11,000 from her personal injury settlement. The subject of constructive trust was discussed in the recent case of *Meyer v. Ludwig* (1974), 65 Wis. 2d 280, 287, 222 N. W. 2d 679, which articulated the standards for the imposition of a constructive trust protecting an equitable claim to real estate. The court held that a constructive trust may be imposed on real estate where (1) the holder of legal title would otherwise be unjustly enriched, and (2) there is an abuse of a confidential relationship. In the present case neither of these elements has been shown. No authority has come to our attention for the proposition that a spouse furnishing funds for unspecified investment acquires an equitable title in the property purchased with those funds. See 41 C. J. S., *Husband and Wife,* p. 735, sec. 250. This question should be distinguished from that of a direct claim against the estate for the $11,000, discussed *infra.*

Again, the record is barren of any evidence of any promise or intent on the part of the deceased to create a joint tenancy in the motel property with Mrs. Weger and, likewise, no evidence is present that Mrs. Weger, in turning over the $11,000 to her husband, in any way relied on or expected that she would be named either the sole owner of the property purchased or a joint tenant in the property purchased.

### Bonds

In 1968 Herman Weger and his son, Thomas Weger, opened a joint savings account at the National Savings & Loan Association, both parties signing the application form. All deposits to the account over the years were made by Herman Weger out of funds owned by him, and all withdrawals were similarly made by him. Thomas Weger never made any deposits or withdrawals.

Commencing in 1966, Herman Weger began purchasing institutional bonds, principally issued by hospitals and nursing homes, including one school district bond. All of these were bearer bonds not issued in the name of an individual. At least four of the bonds were purchased with funds withdrawn from the joint savings account. Ten were purchased through B. C. Ziegler and Co., a dealer in institutional investment securities, through an account entitled "Herman A. Weger or Thomas O. Weger." The eleventh bond was purchased through F. I. duPont, Glore, Forgan & Co. on an account entitled "Mr. Herman A. Weger & Mr. Thomas O. Weger, Jt. Ten." All transactions were made by Herman Weger.

The bonds were kept in a safe deposit box at the Waukesha State Bank. This box was leased jointly by Herman and Thomas Weger, who both signed the lease agreement. Herman entered the safe deposit box on numerous occasions, but Thomas entered the box only

once before his father's death. All income from the bonds was collected by Herman Weger and reported by him for tax purposes.

The trial court found that the maintenance of the Ziegler Company account in the names of both Herman and Thomas Weger was insufficient to create a joint property interest in the bonds, where the funds used were solely Herman Weger's and the bearer bonds were delivered to him. The court found no evidence of any agreement between Herman and Thomas Weger, the obligees on the bonds, and the Ziegler Company that Herman and Thomas Weger were to be treated as co-owners, but this overlooks the fact that Ziegler actually did transfer the bonds to Thomas Weger as the survivor following Herman Weger's death, without any question being raised. The court concluded that, as far as the Ziegler account was concerned, the bonds belonged to the estate. However, four of the bonds had been purchased with funds withdrawn from the joint savings account. The trial court found that Thomas' joint interest in the savings account had not been severed by the withdrawal, and could be traced into the four bonds.

To determine the ownership status of the bearer bonds on the death of Herman Weger, we must look to the intent of Herman Weger as shown by the record before us. His intent to create a joint tenancy in the savings account is not disputed. This is the type of joint savings account that this court has repeatedly recognized as a "survivorship account"—a joint tenancy to take effect only upon the death of the one furnishing the funds for the joint account. *Estate of Michaels* (1965), 26 Wis. 2d 382, 393, 132 N. W. 2d 557; *Estate of Kohn* (1969), 43 Wis. 2d 520, 525, 168 N. W. 2d 812. In this case, all money going into the joint savings account was supplied by Herman Weger. Only Herman Weger

withdrew from the joint savings account. This type of account does create a joint tenancy, but the effect of that joint tenancy with the nondepositing joint tenant occurs only upon the death of the contributing tenant.

An analogous arrangement existed with respect to the bonds. These were bearer bonds; there was no way in which the face of the bond could indicate that Herman Weger was an owner, let alone that Herman and Thomas Weger were joint owners. The only way that ownership could be shown was through the account at the Ziegler Company through which the bonds were purchased. Herman Weger was plainly the contributing joint tenant. He would purchase the bonds, take the income from them, report it as his income for tax purposes, and, when necessary, redeem the bonds and reinvest the money. At no time did Thomas Weger use any of his own funds to purchase bonds, nor did he receive any income from or cash any of the bonds. It was Herman Weger who had access to the safety deposit box, and withdrew and replaced bonds in the box. It is clear that the Ziegler bond account was treated by Herman Weger in the same way as the savings account—as a joint tenancy to take effect upon his death. We therefore conclude that under the facts as shown in this record, as a matter of law Thomas O. Weger was the surviving joint tenant of all eleven of the bearer bonds.

The trial court relied on a "tracing" theory to find that four of the bonds were in fact jointly owned, by tracing the money from the joint savings account to the purchase of the bonds. However, in view of the fact that the joint savings account was a survivorship account only, it is clear that Herman Weger could have withdrawn funds from that joint account and purchased bonds or other property in his own name or for others, and that because of its survivorship nature, Thomas Weger would have had no claim, through tracing, to any property thus purchased by Herman Weger. We do not

rely on any theory of tracing to support the conclusion that the bonds were held in joint tenancy, but rather on the manner in which the bonds themselves were purchased and held.

### Other Issues

The $11,000 settlement award that Mrs. Weger gave her husband was raised as a direct money claim against the estate, as an alternative to the constructive trust theory mentioned above. This claim was summarily dismissed by the trial court after Mrs. Weger took the stand and, under the questioning of her counsel, in effect rescinded this claim by saying that she had been advised that she could not testify as to transactions with her husband under the so-called "dead man's" statute, and that both her daughter and Thomas O. Weger would deny their presence at transactions concerning the $11,000. Shirley Weger now argues that the matter should be the subject of a new trial in the interest of justice, since the issue was not fully litigated below. In view of the state of the record, we cannot find a basis for a new trial in the interest of justice under sec. 251.09, Stats.[3] We cannot conclude that any miscarriage of justice has occurred, or that a different result would probably be reached on remand.

---

[3] "251.09 **Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

. Shirley Weger also asks this court to grant a new trial on her claim that under sec. 861.17, Stats.,[4] she was, in effect, defrauded by the transactions between her deceased husband and his son. At the trial of this matter a petition was filed under sec. 861.17 to subject property transferred through joint tenancy to Thomas Weger to the rights of Mrs. Weger as a surviving spouse. She now claims that the issues were not fully tried. On the contrary, the record does not even hint that there existed unintroduced facts concerning fraudulent transfers by Herman Weger to Thomas Weger. Her counsel in the course of the proceedings "subserved" the claims made by her in her sec. 861.17 petition to the claims of the estate as set forth by the personal representatives. Mrs. Weger's present counsel argues that the abandonment of the claim by her prior counsel is "inexplicable." However, it is entirely consistent with an informed conclusion on his part that the only evidence he would be able to produce to show that the joint property had been fraudulently transferred was the same evidence which the personal representative would use in his petition to have the eleven bonds declared the sole property of the deceased. There is no evidence in the record and no unintroduced evidence suggested in the briefs of counsel which would tend to show Herman Weger's fraudulent

[4] "861.17 **Rights in nonprobate property transferred in fraud of surviving spouse.** (1) Nothing in this chapter precludes a court in an equitable proceeding from subjecting to the rights of the surviving spouse under this chapter any property arrangement made by the decedent in fraud of those rights. A property arrangement in fraud of the rights of the surviving spouse means any transfer or acquisition of property regardless of the form or type of property rights involved, made by the decedent during marriage or in anticipation of marriage for the primary purpose of removing the property from the probate estate in order to defeat the rights of the surviving spouse under this chapter.

"(2) An arrangement made before marriage, or within one year after marriage, or prior to April 1, 1971, to provide for issue by a prior marriage is not a fraudulent property arrangement within the meaning of this section."

intent in creating the joint tenancies with his son, Thomas. There is no basis on which this court could find any miscarriage of justice and, therefore, no basis for award of a new trial under sec. 251.09, Stats.

Another issue raised in the briefs concerned the homestead property consisting of a house, other buildings, and 77 acres of land. It appears from the briefs that Mrs. Weger now wants the home with the 77 acres intact, and there appears to be no dispute that she has this right with a corresponding offset against her share of the estate. It was indicated at oral argument that this was understood and accepted by all parties.

### Summary

We affirm the trial court's decision as to the land contract proceeds. As to the bearer bonds, we conclude that all eleven bonds belong to Thomas O. Weger as the surviving joint tenant and, therefore, reverse the trial court's decision that seven of the eleven bonds as set forth in the inventory[5] belong to the estate. The various requests for a new trial are denied.

*By the Court.*—Affirmed in part, reversed in part, and remanded.

The following opinion was filed April 26, 1976.

PER CURIAM *(on motion for rehearing)*. Shirley Weger and the personal representative point out correctly that our treatment of the bearer bonds as analogous to the joint savings account of *Estate of Michaels, supra,* overlooks the fact that in order to avoid the Statute of Wills, sec. 853.03, Stats., this court in *Michaels* based its holding that an effective survivorship arrangement existed on a statute, sec. 221.45, was interpreted as vesting legal

---

[5] The eleven bonds are listed in the inventory at II.A. (2) (a)–(k). We reverse as to items (b), (c), (d), (f), (g), (i), and (j). The other four bonds, items (a), (e), (h), and (k), have already been awarded to Thomas O. Weger.

title in the noncontributing depositor.[1] Sec. 221.45 does not, of course, apply to bearer bonds, and thus to the extent that the holding in *Michaels* relied on that statute, our reliance on it in the present case was inappropriate.

This does not change the result in the present case, however, since regardless of whether a survivorship arrangement can be justified under *Michaels,* the facts here support a finding that a common-law joint tenancy existed in the bearer bonds. Of the traditional "four unities" required for a joint tenancy, see *Nichols v. Nichols* (1969), 43 Wis. 2d 346, 350, 168 N. W. 2d 876, only the "unity of possession" presents a question. It is true that Herman Weger was practically alone in exercising any control over the bonds, but on at least one occasion before his father's death Thomas entered the jointly leased box, and he was able to do so immediately after the death. The unity of possession requirement has been very liberally construed, *Nichols v. Nichols, supra,* and the present case satisfies the requirement. In *Michaels,* by contrast, the noncontributing depositor did not even know of the existence of the joint account, much less exercise any possessory control. Moreover, one of the bonds at issue here,[2] and another not at issue but relevant to the parties' intent,[3] were purchased specifically in the names of Herman and Thomas Weger as joint tenants. These bonds were joint property under sec. 700.19, Stats.,[4] which makes such an intent ex-

[1] *See: Estate of Trecker* (1974), 62 Wis. 2d 446, 454, 215 N. W. 2d 450. Sec. 221.45 has now been repealed and recodified at sec. 705.04, Stats.

[2] Inventory item "e," the bond purchased through F. I. duPont, Glore, Forgan & Co.

[3] Inventory item "l," a $26,000 hospital bond purchased from Francoeur Co.

[4] "700.19 **Creation of joint tenancy.** (1) GENERALLY. The creation of a joint tenancy is determined by the intent expressed in the document of title, instrument of transfer or bill of sale.

pressed on a "bill of sale" sufficient to create a joint tenancy. As in *Central Wisconsin Trust Co. v. Schumacher* (1939), 230 Wis. 591, 284 N. W. 562, the pattern of joint tenancy holdings clearly evidenced on some securities should be extended to others less clearly denominated where consistent with the parties' intent. Finally, it should be noted that sec. 182.24,[5] may do for securities what sec. 221.45, did for bank accounts, although it is not strictly applicable to bearer bonds, and we do not rest the present decision upon it.

Any of the following constitute an expression of intent to create a joint tenancy: 'as joint tenants', 'as joint owners', 'jointly', 'or the survivor', 'with right of survivorship' or any similar phrase."

[5] "182.24 **Transfers from joint tenants.** If any security issued by a corporation, whether or not organized or created under the laws of this state, is registered in the names of 2 or more individuals who are named in the registration as joint tenants, then any bank, broker, issuer, transfer agent or purchaser for value, acting either within or without this state in connection with a sale, exchange, transfer, redemption or retirement of such security, incurs no liability by reason of treating the interest created by such registration as a joint tenancy and, if one or more of such named individuals is deceased, incurs no liability by reason of treating the survivor or survivors as the owner or owners unless such bank, broker, issuer, transfer agent or purchaser for value has actual knowledge of a contrary adjudication pursuant to s. 867.04. Nothing in this section shall affect inheritance tax liability for failure to comply with s. 72.29 (2)."