ESTATE OF LEONARD P. KINCADE, DECEASED, VERL G. MILLER, RALPH BERRY, AND LILIEN KINCADE, CO-EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4030–74.     Filed November 16, 1977.

*William W. Oliver,* for the petitioner.
*Elsie Hall,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency of

$15,781.51 in the Federal estate tax of Leonard P. Kincade. The notice of deficiency also determines an addition to tax of $9,213.18 for late filing of the estate tax return pursuant to section 6651(a), I.R.C. 1954. The addition to tax is conceded by petitioner when computed on the amount of the deficiency as redetermined by the decision of this Court.

The primary issue in this case is whether certain nonregistered bearer bonds in decedent's safe-deposit box at the time of his death were owned outright by decedent's surviving wife and were not includable in his estate, and whether others were jointly owned by decedent and his wife and passed to decedent's wife by survivorship at the time of his death, and thus qualified for the marital deduction under section 2056, I.R.C. 1954.[1] Petitioner claimed in the alternative that if some of the bonds were not held as joint tenants with right of survivorship, they were owned by decedent and his wife as tenants in common and that only one-half the value thereof should be included in decedent's gross estate.[2]

All of the facts in this case have been stipulated and are so found.

Leonard P. Kincade, a resident of Terre Haute, Ind., died testate on January 10, 1970. He was survived by his wife, Lilien, and his only child, Claire Kincade Feith. During his lifetime Leonard P. Kincade (hereinafter Leonard) was a practicing attorney in Terre Haute.

Decedent's will, which was executed January 2, 1970, was duly entered for probate by the Circuit Court of Vigo County, Ind. Verl G. Miller and Ralph Berry, Leonard's law partners, and Lilien were appointed coexecutors of his estate. Under the terms of his will, after disposing of his interest in the assets of the law firm and making provision for payment of debts and taxes, Leonard conveyed all of his residuary estate to Miller and Berry, as trustees, to hold the same and distribute the income therefrom in monthly or other convenient installments to his wife and daughter as long as both or either of them should live. Upon the death of his wife and daughter the principal of the trust was to be distributed to named third parties.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise stated.

[2] Petitioner does not argue this alternative contention on brief and we assume it has been abandoned.

While inventorying the assets of the estate, Berry and Miller examined a safe-deposit box located at the Terre Haute Savings Bank and held in the names of Leonard, Berry, and Miller. Access to the box was confined to the three men during Leonard's lifetime. The box was used by Berry and Leonard to contain items other than assets of their law firm. At the time the box was inventoried it contained certain nonregistered bearer bonds in envelopes with a return address from the Los Angeles, Calif., stock brokerage firm of Bateman, Eichler, Hill & Richards. The envelopes were addressed to Leonard P. Kincade at his business address or were addressed to the president of the Terre Haute Savings Bank.

Curtis H. Bingham, an account executive at Bateman, Eichler, Hill & Richards, who was a social acquaintance of the Kincades, handled the accounts pertinent to these bonds. Bingham explained that three accounts were maintained for the Kincades by this firm—one in Leonard's name, one in Lilien's name, and one in both of their names; the latter was entitled "Kincade, Leonard P. and Mrs. Lilien, 48493 (jt.)." Lilien was aware during Leonard's lifetime of the existence of the three accounts at Bateman, Eichler, Hill & Richards.

Leonard maintained a joint checking account with Lilien and Claire at the Terre Haute Savings Bank; he also maintained a joint savings account with Lilien at the same bank. The balances in the two accounts at the time of Leonard's death were $42,162.80 and $40,681.91, respectively, all of which were included in Leonard's gross estate on the estate tax return. Apparently, the bonds were purchased with checks drawn on one or both of these accounts.

One of the envelopes in the safe-deposit box contained three nonregistered bearer bonds described as follows:

County Sanitation District #22 of Los Angeles County, California, bond purchased November 1, 1963, face value: $5,000.

State School Building Aid Bond—California, Series 2 purchased September 1, 1961, face value: $5,000.

Department of Water and Power of the City of Los Angeles—electric plant revenue bond, 1962 issue, face value: $15,000.

The envelope which contained these three bearer bonds bore the name of Lilien Kincade written in Leonard's handwriting. The estate released the three bonds enclosed in the envelope as being the individual and separate property of Lilien. These bonds were

not reported on the Federal estate tax return, and no adjustment was proposed with respect to these bonds in the statutory notice of deficiency.

The other bonds in the safe-deposit box had no designated ownership inscribed upon the envelopes in which they were contained. These bonds were valued by Bingham at $130,080 as of the date of Leonard's death and were reported on the Federal estate tax return as part of Leonard's gross estate.[3]

The Federal estate tax return was filed by the coexecutors on September 27, 1971, 5 months and 17 days after the due date of the return. The coexecutors had not requested an extension of time to file the return and no such extension was ever granted. On Schedule B of the estate tax return the full value of the bonds valued by Bingham at $130,080 was included as an asset of the estate. The balances in the two bank accounts, totaling $82,844.71, were reported on Schedule E as jointly held property. On Schedule M of the return reporting bequests to surviving spouse qualifying for the marital deduction were included one-half of the value of the bonds, or $65,040, one-half of the balance in the checking account, or $21,081.40, and the entire balance in the joint savings account, or $40,681.91. These amounts, together

---

[3]Of those bonds reported on Schedule B of the return petitioner claims in this case that the following were owned by Lilien rather than Leonard:

Item 3. Ten Department of Water and Power of the City of Los Angeles—Electric Plant Revenue Bonds, issued 1958, total date-of-death values : $6,500.

Item 5. Five Board of Water and Power Commissioners of Los Angeles Bonds, issued 1962, total date-of-death values: $3,150.

Item 11. Five City of Los Angeles—Municipal Airport Bonds, issued 1956, total date-of-death values: $3,700.

Petitioner further alleges that the following bonds were owned jointly by Lilien and Leonard as of the date of his death:

Item 2. Five Triborough Bridge and Tunnel Authority Bonds, issued January, 1960, total date-of-death values: $4,450.

Item 4. One Los Angeles City School District Bond, issued 1958, date-of-death value: $700.

Item 15. One Department of Water and Power of Los Angeles Bond, issued 1957, date-of-death value: $700.

Item 17. One San Diego Arena Lease Company Bond, issued 1965, date-of-death value: $2,100.

Item 22. Three Los Angeles City School District Bonds, issued 1958, total date-of-death values: $2,100.

Item 23. Five State of California—State Construction Bonds, issued 1958, total date-of-death values: $3,750.

Item 25. Five Power Authority of State of New York Bonds, issued ?, total date-of-death values: $4,650.

Item 26. Five San Diego County Water Authority—Water Works Bond, issued 1957, total date-of-death values: $4,000.

Item 27. Five Anaheim Union High School District Bonds, issued 1962, total date-of-death values: $3,800.

with the value of other qualifying properties, were included in the computation of the marital deduction, and were deducted as such to the extent of one-half of the adjusted gross estate.

On September 26, 1973, Lilien, as coexecutrix of the estate, filed a complaint for damages against Berry and Miller with the Superior Court of Vigo County, Ind. This complaint charged that Berry and Miller were derelict in their duties with respect to Leonard's estate by failing to file the Federal estate tax return by the due date. On the same day, Lilien and Claire filed a separate complaint for damages against Berry and Miller with the Superior Court of Vigo County, Ind. This second complaint alleged malfeasance by Berry and Miller in the performance of their duties with respect to the estate by not advising Lilien of her power to elect a one-third statutory share of her husband's estate and by failing to deliver to her certain property which she alleged was jointly held with the decedent thereby resulting in an increased Federal estate tax liability. As a result of the two complaints Berry and Miller filed a $4 million libel and malicious prosecution suit against the four attorneys representing Lilien.

On or before September 21, 1976, Lilien, Claire, Berry, Miller, and all other parties involved in the local litigation entered into an agreement settling the litigation. Very few concessions were made in this agreement by Lilien and Claire. At the time the settlement was reached Berry was running for Circuit Judge of Vigo County and the negotiations may have reflected a desire to avoid publicity. Lilien's attorney drafted a "Findings and Judgement on Partial Objections to Immediate Accounting of Co-Executors" which was filed with the Vigo County Circuit Court on September 21, 1976. On the same day the judge of the Vigo Circuit Court entered an order setting forth its findings of fact and conclusions with respect to ownership of the bonds in litigation.[4] The findings of fact recited the history of the litigation, the facts with respect to the two bank accounts, the safe-deposit box and the bonds found therein, the existence of the three brokerage accounts and which of the bonds had been purchased through which accounts, and the purchase of $30,000 face value of bonds by Leonard the day before he died which were paid for with funds from the triple joint checking account

---

[4]Presumably the document drafted by Lilien's attorney was adopted by the court as its order.

in the names of Leonard, Lilien, and Claire. Based on these findings, the court found and ordered that the $20,000 face value of bonds purchased through the brokerage account in Lilien's name had at all times been her sole property, that $35,000 face value of the bonds purchased through the brokerage account in the joint names of Leonard and Lilien became the sole property of Lilien by survivorship, and that the $30,000 face value of bonds paid for out of the joint checking account became the joint property of Lilien and Claire by survivorship.

In the notice of deficiency respondent determined that the bequest to Lilien in Leonard's will was a terminable interest and therefore the bonds mentioned above and included in the gross estate did not qualify for the marital deduction; the marital deduction was reduced accordingly. In the petition filed in this case, petitioner claimed (a) that it was error to include the bonds purchased through Lilien's brokerage account in Leonard's gross estate, and (b) that it was error not to allow the marital deduction for the value of the bonds that were purchased through the joint brokerage account of Leonard and Lilien.

With regard to the bonds purchased through the brokerage account bearing only Lilien's name, the issue is simply whether they were owned by Lilien or Leonard. With regard to the bonds purchased through the joint brokerage account the issue is whether those bonds were owned by Lilien and Leonard as joint tenants with right of survivorship. Apparently recognizing that under section 2040 of the Code,[5] the full value of these bonds were taxable in Leonard's estate unless a contribution by Lilien could be shown, and being unable to trace any part of the purchase price of the bonds to Lilien, petitioner claims that Lilien took outright ownership of these bonds by survivorship and the value thereof must be included in the computation of the marital deduction. If an interest in the bonds passed to Lilien as

---

[5]SEC. 2040. JOINT INTERESTS.

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: * * *

(See change made by Tax Reform Act of 1976 which added new subsec. (b).)

the survivor of a joint tenancy therein with decedent, such interest would qualify for the marital deduction. Sec. 2056(e)(5).

The bequest to Lilien in decedent's will gave her only a life estate in the residuary estate which was a terminable interest that would not qualify for the marital deduction, and petitioner does not argue to the contrary. Thus, if the bonds were properly included in decedent's gross estate and Lilien's interest therein was derived under the will, we must hold for respondent. Petitioner relies primarily on the order of the Vigo County Circuit Court to prove that some of the bonds were Lilien's outright and that others were owned by Lilien and Leonard as joint tenants and on Leonard's death passed to Lilien by survivorship regardless of the will.

All of the bonds in issue were bearer bonds with no names on them that would indicate ownership. They were all found in a safe-deposit box held in the names of Leonard and his two law partners and only they had access to the box during Leonard's lifetime. Nothing in Leonard's will suggested who the owners of the bonds might be. The bonds were actually purchased and paid for by Leonard, although the source of the funds used to make the purchases has not been established. Further, there is no evidence that Lilien contributed any moneys to the various bank accounts which were probably the source of the funds. On this evidence alone we would have to conclude that petitioner failed to carry its burden of proving that Lilien was either the owner or joint owner of any of these bonds. The one factor that petitioner must rely on to prove Lilien's outright ownership of some of the bonds and joint ownership of the others is that some of the bonds were bought through a brokerage account bearing Lilien's name only or an account bearing the identification "Kincade, Leonard P. and Mrs. Lilien, 48493 (jt.)."

Petitioner relies on the judgment order entered by the Vigo County Circuit Court holding that the bonds purchased through Lilien's account were and always had been Lilien's alone, and that the bonds purchased through the joint brokerage account were owned by Leonard and Lilien as joint tenants and that upon Leonard's death Lilien became the sole owner by survivorship.

We learn from *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967), that—

the underlying substantive rule involved is based on state law and the State's

highest court is the best authority on its own law. If there be no decision by that court then Federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. * * *

Since the Vigo County Circuit Court is not the highest court of the State of Indiana we are not bound by its decision.

Petitioner recognizes this principle but argues that since the litigation in the county court was hotly contested maximum probative value should be given to the court's decision. We cannot agree with this because while the litigation may have been hotly contested and was probably not collusive, the judgment of the county court was based on a settlement agreement of the parties rather than an independent decision of the court applying Indiana law in an adversary proceeding. See *Estate of Nachimson v. Commissioner*, 50 T.C. 452 (1968). Also see sec. 20.2056(e)–2(d)(2), Estate and Gift Tax Regs. Nevertheless, we have given what we deem to be "proper regard" to the judgment of the county court.

Our duty is to determine whether the highest court of the State of Indiana would conclude under Indiana law that the fact that these bonds were purchased through brokerage accounts bearing Lilien's name gave her an ownership interest in the bonds.

We consider first the bonds purchased through the joint brokerage account.

Petitioners argue that section 32–4–1–1(c), Ind. Stat. Ann. (Burns 1973), would compel the Indiana courts to find a joint tenancy[6] in the bonds purchased through the joint account. This section is an expansion of prior law[7] and reverses the presump-

---

[6]This statute reads in pertinent part:

(c) * * * any * * * bond * * * evidencing an interest in tangible or intangible personal property in the name of both husband and wife, shall upon the death of either become the sole property of the surviving spouse unless a clear contrary intention is expressed in a written instrument; * * *

[7]See 2 R.S. 1852, ch. 9, sec. 4; Acts 1949, ch. 145, sec. 1; Ind. Stat. Ann. sec. 51–104 (Burns 1964), which provides:

(a) Except as to obligations of the United States government, held jointly or on which there appears the name of a surviving co-owner, the survivor of persons holding personal property in joint tenancy shall have the same rights only as the survivor of tenants in common, unless otherwise expressed in the instrument.

(b) The survivor of persons holding obligations of the United States government either jointly or as co-owner, shall become the sole owner of such obligations upon the death of the joint owner and/or

tion from tenancy in common to joint tenancy when dealing with certain personal property owned by a husband and wife. As respondent points out, however, section 32–4–1–1(c) was not added by amendment until 1971.[8] Leonard's death in 1970, therefore, renders section 32–4–1–1(c) irrelevant. See *Lester v. Lester*, 160 Ind. App. 671, 313 N.E.2d 357 (1974).

We note that section 32–4–1–1(a) (see n. 7), which was a part of the law at the time of decedent's death, provided that the survivor of persons holding personal property, other than obligations of the United States Government, in joint tenancy shall have only the same rights as the survivor of tenants in common, unless otherwise expressed in the instrument. Since the instruments which make up the property here involved, the bonds themselves, do not express ownership at all, this section would appear to militate against petitioner's claim of joint tenancy if it is applicable. But this section rather begs the question because it assumes that the property involved is held jointly, and we cannot reach such a conclusion from the bonds alone.

Petitioner could cite no Indiana cases directly in point on the issue before us but does direct our attention to a decision of the Wisconsin Supreme Court, *Estate of Weger*, 71 Wis.2d 484, 238 N.W.2d 522 (1976), rehearing denied 71 Wis.2d 484, 241 N.W.2d 157 (1976), which it claims the Indiana court would probably follow. In that case, a father had purchased bearer bonds with his funds, some of which had been drawn from a joint savings account he had established with his son, through brokerage accounts titled in his name and the name of the son. The bonds were kept in a safe-deposit box leased jointly by the father and son but the son had entered the box only once before the father's death while the father had entered it frequently and had collected and reported on his income tax return all income from the bonds. The court looked to the intent of the father to determine the ownership status of the bearer bonds on the father's death. Finding that it was apparent from all the circumstances that the father intended with respect to both the joint savings account and the joint brokerage account to create

co-owner.

These subsections are continued without significant change in sec. 32–4–1–1(a) and (b).

[8]Sec. 32–4–1–1 was repealed in its entirety in 1975. 1975 Ind. Acts, Pub. L. 288, sec. 51.

joint tenancies that would take effect only on the death of the father, the court brushed aside an argument about tracing the funds used to purchase some of the bonds to the son's interest in the joint savings account, but concluded that on the facts in the record, "as a matter of law [the son] was the surviving joint tenant of all eleven of the bearer bonds."

The *Weger* case might be helpful to petitioner if it were factually on all fours with this case and if the Indiana court would apply the same principles, but we doubt that the Indiana court would accept it as authority because in denying a petition for rehearing the Wisconsin court emphasized the fact that the son had access to the box both before and after the father's death, thereby establishing unity of possession, *Estate of Weger*, 241 N.W.2d 157 (1976). In our case, Lilien was aware of the existence of the brokerage accounts but she did not have authority at any time to enter the safe-deposit box. There was no unity of possession.[9]

Under Indiana law, an intention to create a joint tenancy with right of survivorship must be clearly and unequivocally manifested in the instrument that creates the estate. An instrument payable to a husband and wife is insufficient without more to create a joint tenancy. *Salvation Army, Inc. v. Hart*, 239 Ind. 1, 154 N.E.2d 487 (1958) . See *Hibbard v. Hibbard*, 118 Ind. App. 292, 73 N.E.2d 181 (1947). Here the only evidence we have that any kind of joint ownership of these bonds existed is the fact that the bonds were bought through the joint brokerage account and the broker thought they were intended to be jointly owned. Of course it is the intent of the purchaser that must be clearly manifested, not that of the broker, and the only evidence of Leonard's intent was that the brokerage account was entitled "Kincade, Leonard P. and Mrs. Lilien, 48493 (jt.)."

We agree with petitioner that the fact that some of the bonds were purchased through the joint brokerage account and some of them through the account in Lilien's name alone rather than through his personal account is entitled to some weight as evidence that Leonard intended the bonds so purchased to be owned jointly by Lilien and himself or by Lilien alone. But to carry out such intent, if it existed, Leonard would have had to

---

[9]We recognize, however, that the Indiana Courts no longer require the common law four "unities." *Robison v. Fickle*, 340 N.E.2d 824 (1976).

make completed gifts to Lilien to establish her ownership interest.[10] This is so because we have no evidence that Lilien's funds were used to purchase the bonds or that Leonard was acting as her agent in purchasing the bonds.

The necessary elements of a valid gift inter vivos in Indiana are: (1) The donor must be competent to contract; (2) there must be freedom of will; (3) the gift must be completed and nothing left undone; (4) the property must be delivered by the donor and accepted by the donee; and (5) the gift must go into immediate and absolute effect. *Zorich v. Zorich,* 119 Ind. App. 547,88 N.E.2d 694, 697 (1949). See *Kraus v. Kraus,* 235 Ind. 325, 132 N.E.2d 608 (1956).

Obviously, the major hurdle petitioner must overcome in order to prove a valid inter vivos gift of the bonds is the element of delivery. This element is critical under Indiana law. In *Zorich v. Zorich, supra,* the Indiana Court of Appeals held that the mere fact that a father had deposited money in a United States postal savings account in the names of his son and daughter did not make such deposits gifts to the children where the father had retained the postal certificates in his exclusive possession and under his dominion and control. In the course of its opinion the court said (page 698):

> Delivery of the alleged gift must be made with both an intention to give, and a stripping of the donor of all dominion or control over the thing alleged to be given.
>
> The change of title must be irrevocable. * * * And so essential is delivery as a factor in the transaction that it has been said; "Intention can not supply it; words can not supply it; actions can not supply it. It is an indispensable requisite, whithout which the gift fails regardless of the consequences. * * * "

In *Hayes v. McKinney,* 73 Ind. App. 105, 126 N.E. 497 (1920), a brother placed bonds which he owned in a safe-deposit box rented by him in his sister's name. The brother subsequently stated that he desired his sister to have the bonds, but the brother retained a key to the box. The brother thereafter cut coupons from the bonds and returned the bonds to a second safe-deposit box rented in his own name where the bonds remained until his death. The court held that the irrevocable delivery

---

[10] On Schedule G of the estate tax return the executors reported no transfers without consideration during decedent's life.

required to make a valid gift inter vivos had not been established.

In *Grant Trust & Savings Co. v. Tucker*, 49 Ind. App. 345, 96 N.E. 487 (1911), the donor had delivered to a bank certain bonds enclosed in an envelope marked "In case of my death deliver to" his niece. Subsequently the donor delivered other bonds to be placed in this envelope with the same instructions. The donor occasionally clipped and used the coupons from the bonds as they became due, but on numerous occasions he disclaimed ownership of the bonds asserting that they were the property of his niece and that he exercised no control over those bonds. Though at times he had physical possession of the bonds, he treated the bonds at all times as the property of his niece. With regard to the question of delivery, the court explained:

> It is the law in this state that to make a valid gift inter vivos, it is essential that the article given be unconditionally delivered in the lifetime of the donor, to the donee or to some third person for the use and benefit of the intended donee. If, however, such third person be only the agent of the donor, the death of the latter revokes the authority of the agent and the gift is defeated. * * *
>
> \* \* \* \* \* \* \*
>
> If the property remained under the control of the donor, though in the keeping of the bank, and the bank was subject to his further direction as to its final disposition, then its relation was that of an agent. If, however, the bonds were delivered to the bank by the donor with the intention that the present title and ownership should pass to the donee subject only to the donor's right to the accruing interest thereon during his lifetime, and such intention was carried into effect by the language employed and the things done in relation thereto, then the gift was executed and the bank became and was a trustee for the donee. * * *
>
> The ultimate question as to whether the bank occupied the position of agent or trustee is one of fact to be determined from the intentions of the donor, the writing upon the envelope containing the bonds, the situation and relation of the parties, the kind and character of the property and the things said and done in regard thereto, all as disclosed by the evidence. * * *

In this case Lilien was not a co-renter of the safe-deposit box where the bonds were kept, she had no access to the box either before or after Leonard's death, and so far as we know she may not have been aware of its existence. Lilien may have known about the brokerage accounts opened in her name and in their joint names, but there is no evidence that she traded through either account personally. She may have known that Leonard was buying bonds because she had access to the joint bank accounts, but there is no evidence that she knew which

brokerage accounts were being used for the purchases. None of the bonds was ever actually delivered to her.

With reference to the bonds purchased through the joint brokerage account, there is no support for a claim that the broker was acting as agent for Lilien. Leonard's was the lead name on the account, he ordered the bonds and paid for them, and the bonds were delivered to him. On such facts we cannot deem that there was a constructive delivery of the bonds by the broker to Lilien. It may have been Leonard's intention to make a gift to Lilien by giving her a joint tenancy interest in the bonds purchased through the joint brokerage account but he did not take the necessary steps to either complete an inter vivos gift or create a joint tenancy in the bonds under Indiana law. *Zorich v. Zorich, supra; Salvation Army, Inc. v. Hart, supra.*

A little stronger argument can be made in support of petitioner's claim that the bonds purchased through Lilien's individual brokerage account were owned outright by her. We need not be concerned with whether Leonard took the necessary steps to create a joint tenancy. The only question is whether Leonard made a completed inter vivos gift of these bonds to Lilien. Whether there was sufficient delivery of the bonds to Lilien to comply with the requirements of the law and whether the gift became immediately and absolutely effective are the critical elements. See *Zorich v. Zorich, supra.*

It can be argued, and the testimony of the broker supports it to some extent, that when Leonard asked the broker to buy the bonds for Lilien's account and the broker bought the bonds and charged them to Lilien's account the broker was acting as agent for Lilien. Thus when Leonard paid for the bonds he completed an inter vivos gift to Lilien. It could be said that the bonds were constructively delivered to Lilien when they were charged to her account and that Leonard was acting as her agent when he accepted delivery of the bonds and put them in his safe-deposit box for safekeeping. However, we are not convinced that this argument would prevail in the Indiana Supreme Court.

First, in light of the fact that Lilien was apparently unaware of these transactions and never had possession of or access to the bonds we doubt that the constructive delivery theory would comply with the requirements of Indiana law requiring actual delivery. The delivery must be such as to strip "the donor of all dominion or control over the thing alleged to be given," *Zorich v.*

260

*Zorich, supra;* it must be "unconditionally delivered in the lifetime of the donor to the donee or to some third person for the use and benefit of the intended donee." *Grant Trust & Savings Co. v. Tucker, supra.* Such was not the case here. Secondly, it could not be said that the constructive delivery was such as to make the gift immediate, absolute, and irrevocable. Leonard never relinquished absolute dominion and control over the bonds and from what we can determine from the evidence presented, Lilien could not have exercised rights of ownership of the bonds at any time. At all times Leonard could have done what he wanted to do with these bonds the same as he could have with the bonds purchased through his own account.

It is apparent from the above that neither the bonds purchased through the joint account nor those purchased through the Lilien Kincade account would have been considered Lilien's property by the highest court in Indiana. Consequently, we do not feel bound by the judgment of the Vigo County Circuit Court entered in accordance with the settlement agreement of the parties. The bonds at issue in this case were properly included in Leonard's estate. Moreover, because the trust established in Leonard's will for Lilien's benefit does not satisfy the terminable interest rule of section 2056(b), Leonard's estate is not entitled to a marital deduction with regard to the bearer bonds at issue in this case.

To permit petitioner to establish an additional estate tax deduction for expenses arising from the litigation in this case,

*Decision will be entered under Rules 155 and 156.*